# EXHIBIT A



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

WILLIAM LEE GRANT II
_____
Plaintiff

vs.

Case Number    2021 CA 003691 B

WILLIAM PELHAM BARR & UNITED STATES OF AMERICA
_____
Defendant

## SUMMONS

To the above named Defendant: WILLIAM PELHAM BARR
5904 CALLA DRIVE
MCLEAN, VIRGINIA 22101

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Name of Plaintiff's Attorney

**WILLIAM LEE GRANT II**

Address
901 WYTHE ROAD, SPRINGFIELD, IL 62702

**(217)726-5269**

Telephone

By _____
Clerk of the Court

Deputy Clerk

Date            10/15/2021

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

Civil Division
NOV 05 2021
US Attorney's Office DC

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4



**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

WILLIAM LEE GRANT III
   Vs.
UNITED STATES OF AMERICA et al

C.A. No.   2021 CA 003691 B

## INITIAL ORDER AND ADDENDUM

### Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

(1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of (a) the summons, (b) the complaint, and (c) this Initial Order and Addendum. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

(3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

(4) At the time stated below, all counsel and unrepresented parties shall participate in a remote hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients **before** the hearing whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this hearing.**

(5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

**Chief Judge Anita M. Josey-Herring**

Case Assigned to: Judge FERN FLANAGAN SADDLER
Date:    October 14, 2021
Initial Conference: **REMOTE HEARING - DO NOT COME TO COURTHOUSE**
**SEE REMOTE HEARING INSTRUCTIONS ATTACHED TO INITIAL ORDER**

9:30 am, Friday, January 07, 2022
Location:   Courtroom 100
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

D.C. Code § 16-2821, which part of the Medical Malpractice Proceedings Act of 2006, provides,   "[a]fter action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ('ISSC'"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC."

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available.   Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. Unrepresented plaintiffs who elect not to eFile must either mail the form to the Multi-Door Dispute Resolution Office at, Suite 2900, 410 E Street, N.W., Washington, DC 20001, or deliver if in person if the Office is open for in-person visits.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation.  D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one.  D.C. Code § 16-2823(b).

The following people are required by D.C. Code § 16-2824 to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826.  Any Plaintiff who is unrepresented may mail the form to the Civil Actions Branch at [address] or deliver it in person if the Branch is open for in-person visits. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Anita M. Josey-Herring

2                                      CAIO-60

**Civil Remote Hearing Instructions for Participants**

The following instructions are for participants who are scheduled to have cases heard before a Civil Judge in a **Remote Courtroom**

**Option 1:** **(AUDIO ONLY/Dial-in by Phone):**

**Toll 1 (844) 992-4762 or (202) 860-2110, enter the Meeting ID from the attachment followed by #, press again to enter session.**

- *Please call in no sooner than 5 minutes before your scheduled hearing time. Once you have joined the session, please place your phone on mute until directed otherwise.  If you should happen to get disconnected from the call, please call back in using the phone number and access number provided and the courtroom clerk will mute your call until the appropriate time.*

If you select **Option 2** or **Option 3** use the **Audio Alternative**

**Option 2:** **(LAPTOP/ DESKTOP USERS 1):**

Open Web Browser in Google Chrome and copy and paste following address from the next page:
https://dccourts.webex.com/meet/XXXXXXXXX

**Option 3:** **(LAPTOP/ DESKTOP USERS 2):**

Open Web Browser in Google Chrome and copy and paste following address
https://dccourts.webex.com  Select **Join**, enter the Meeting ID from the next page

**AUDIO ALTERNATIVE:**  Instead of automatically using **USE COMPUTER FOR AUDIO**, select **CALL-IN** and follow the **CALL-IN** prompt window.  Use a cell phone or desk phone. You will be heard clearer if you **do not** place your phone on SPEAKER. It is very important that you enter the **ACCESS ID #** so that your audio is matched with your video.



**Option 4:** **(Ipad/SMART PHONE/TABLET):**

- Go to App Store, Download WebEx App (Cisco WebEx Meetings)
- Sign into the App with your Name and Email Address
- Select Join Meeting
- Enter address from the next page: https://dccourts.webex.com/meet/XXXXXXXXX
- Click join and make sure your microphone is muted and your video is unmuted (if you need to be
- seen). If you only need to speak and do not need to be seen, use the audio only option.
- When you are ready click "Join Meeting". If the host has not yet started the meeting, you will be placed in the lobby until the meeting begins.

**For Technical Questions or issues Call: (202) 879-1928, Option #2**

Superior Court of the District of Columbia
Public Access for Remote Court Hearings
(Effective August 24, 2020)

**The current telephone numbers for all remote hearings are: 202-860-2110 (local) or 844-992-4726 (toll free).** After dialing the number, enter the WebEx Meeting ID as shown below for the courtroom. Please click a WebEx Direct URL link below to join the hearing online.

Audio and video recording; taking pictures of remote hearings; and sharing the live or recorded remote hearing by rebroadcasting, live-streaming or otherwise are not allowed

| Division | Courtroom | Types of Hearings Scheduled in Courtroom | Public Access via WebEx | |
|---|---|---|---|---|
| | | | **WebEx Direct URL** | **WebEx Meeting ID** |
| Auditor Master | 206 | Auditor Master Hearings | https://dccourts.webex.com/meet/ctbaudmaster | 129 648 5606 |
| Civil | 100 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb100 | 129 846 4145 |
| | 205 | Foreclosure Matters | https://dccourts.webex.com/meet/ctb205 | 129 814 7399 |
| | 212 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb212 | 129 440 9070 |
| | 214 | Title 47 Tax Liens; and Foreclosure Hearings | https://dccourts.webex.com/meet/ctb214 | 129 942 2620 |
| | 219 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb219 | 129 315 2924 |
| | 221 | Civil 1 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb221 | 129 493 5162 |
| | 318 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb318 | 129 801 7169 |
| | 320 | | https://dccourts.webex.com/meet/ctb320 | 129 226 9879 |

CAIO-60

| 400 | Judge in Chambers Matters including Temporary Restraining Orders, Preliminary Injunctions and Name Changes | https://dccourts.webex.com/meet/ctb400 | 129 339 7379 |
|---|---|---|---|
| 415 | Civil 2 Scheduling Conferences; Status, Motion and Evidentiary Hearings including Bench Trials | https://dccourts.webex.com/meet/ctb415 | 129 314 3475 |
| 516 | | https://dccourts.webex.com/meet/ctb516 | 129 776 4396 |
| 517 | | https://dccourts.webex.com/meet/ctb517 | 129 911 6415 |
| 518 | | https://dccourts.webex.com/meet/ctb518 | 129 685 3445 |
| 519 | | https://dccourts.webex.com/meet/ctb519 | 129 705 0412 |
| JM-4 | | https://dccourts.webex.com/meet/ctbjm4 | 129 797 7557 |
| A-47 | Housing Conditions Matters | https://dccourts.webex.com/meet/ctba47 | 129 906 2065 |
| B-52 | Debt Collection and Landlord and Tenant Trials | https://dccourts.webex.com/meet/ctbb52 | 129 793 4102 |
| B-53 | Landlord and Tenant Matters including Lease Violation Hearings and Post Judgment Motions | https://dccourts.webex.com/meet/ctbb53 | 129 913 3728 |
| B-109 | Landlord and Tenant Matters | https://dccourts.webex.com/meet/ctbb109 | 129 127 9276 |
| B-119 | Small Claims Hearings and Trials | https://dccourts.webex.com/meet/ctbb119 | 129 230 4882 |

CAIO-60

D.C. Superior Court
10/07/2021 15:46PM
Clerk of the Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION
CIVIL ACTION BRANCH

WILLIAM LEE GRANT II                 CASE NUMBER:
      Plaintiff

901 Wythe Road
Springfield, Illinois 62702
(217)726-5269

versus

WILLIAM PELHAM BARR
5904 Calla Drive
McLean, Virginia 22101
&
UNITED STATES OF AMERICA
      Defendants

### ACTIONS OF REAGAN'S CHIEF OF STAFF (AORCOS) COMPLAINT

1. The Superior Court of the District of Columbia has jurisdiction pursuant to: D.C. Code §

   13-422 - Personal Jurisdiction based upon Enduring Relationship

   a. William Pelham Barr was Attorney General of the United States when he placed

   Gregory K. Harris on the payroll of the Central District of Illinois U.S. Attorney's

   Office payroll in 1992;

   b. William Pelham Barr was Attorney General of the United States when Six Known

   Members of the U.S. Department of Defense directed Eastern District of Virginia

   Judges: Claude M. Hilton (19-cv-1228) and Rossie D. Alston Jr. (20-cv-173) to

   dismiss Mr. Grant's lawsuit in 2020; and

   c. William Pelham Barr is employed in the District of Columbia.

1

2. The U.S. District Court District of Columbia has subject-matter jurisdiction pursuant to:

    28 U.S.C. 1331 - Federal Question;

    28 U.S.C. 1332 - Diversity of Citizenship;

    28 U.S.C. 1367 - Supplemental
                              Jurisdiction

    28 U.S.C. 2674 - Liability of the
                          United States

    18 U.S.C. 1595 - Peonage, Slavery, &
    Human Trafficking;

    28 U.S.C. 1343 - Civil Rights and Elective
    Franchise

    28 U.S.C. 1346(b)(1) - United States as
                                Defendant

3. The U.S. District Court for District of Columbia has subject-matter jurisdiction pursuant
    to: 28 U.S.C. 1332 - Diversity of Citizenship:

    a.  William Lee Grant II is a resident of Springfield, Illinois;

    b.  William Pelham Barr is a resident of McLean, Virginia.

4. Venue is proper in the U.S. District Court for the District of Columbia pursuant to: D.C.
    Code § 13-422.

5. Caspar Weinberger, Frank Carlucci, William Howard Taft IV, Michael Patrick
    Chamberlain Carns ("Michael P.C. Carns"),  James N. Mattis, Joseph F. Dunford Jr., John
    F. Kelly, and Mark T. Esper hereinafter referred to as "*Six Known Members*" entered into
    an agreement in July of 1990 to unlawfully detain Mr. Grant for more than twenty-six
    (26) years, and to deprive Mr. Grant of his U.S. Constitutional rights for more than
    twenty-six (26) years.

6. The actions of James A. Baker, William Pelham Barr, and *Six Known Members* were
    intentional, wanton, reckless, and performed without remorse.

2

7. Mr. Grant has a claim against James A. Baker III, William Pelham Barr, and *Six Known Members* pursuant to:

    a. deprivation of a U.S. Constitutional right by an officer of the U.S. Federal government acting under color of Federal authority (*See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971);

    b. 42 U.S.C. 1985(3) - Depriving Persons of Rights or Privileges;

    c. 42 U.S.C. 1985(2) - Obstructing Justice;

    d. 42 U.S.C. 1983 - Civil Action for Deprivation of Rights; and

    e. 18 U.S.C. 1595 - Peonage, Slavery, and Human Trafficking.

8. Mr. Grant has a claim against James A. Baker III, William Pelham Barr, and *Six Known Members* pursuant to:

Civil Conspiracy
*See Adcock v. Brakegate, Ltd.*, 645 N.E. 2d. 888 (1994).

Retaliatory Discharge
*See Taylor v. Board of Education of Chicago*, 2014 IL App. (1st) 123744

Abuse of Process
*See Holiday Magic, Inc. v. Scott*, 282 N.E. 2d 452 (IL App. Ct. 1972)

Unlawful Restraint
*See Florida v. Bostick*, 501 U.S. 429 (1991).

False Imprisonment
*See Heck v. Humphrey*, 512 U.S. 477, 484

Predator Protection Act
*See* 740 ILCS 128/20

Invasion of Privacy
*See Green v. Chicago Tribune Co.*, 675 N.E. 2d 249 (Ill. Ct. App. 1996).

Fraud
*See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

Negligent Entrustment
*See Norskog v. Pfiel*, 197 Ill 2d. 60 (2001).

Authorized Assault
*See Meerbrey v. Marshal Field & Co.*, 139 Ill. 2d 455 (1990).
*See Heskett v. Fisher Laundry & Cleaners Co.*, 230 S.W. 2d 28 (Ark. 1950).

Intimidation
*See* 720 ILCS 5/12-6(a)(1)

Savings Statute
*See* 735 ILCS 5/13-217

3

9. Mr. Grant has a claim against James A. Baker III, William Pelham Barr, and *Six Known Members* pursuant to:

D.C. Code 22-1840 - Human Trafficking - Civil Action

D.C. Code 22-1833(1) - Trafficking in Labor or Commercial Sex Acts

D.C. Code 22-1832(a) - Forced Labor

D.C. Code 22-1836 - Benefitting financially from human trafficking

## PLAUSIBILITY STANDARD

10. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face (*See Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009)." Mr. Grant's allegations are deemed admitted as true by virtue of the U.S. Department of Justice (DOJ) and State of Illinois' default history:

   a. the DOJ and State of Illinois defaulted in 16-cv-3245 and 17-cv-3261 in the Central District of Illinois (ILCD);

   b. the DOJ defaulted and failed to appear in 19-cv-3001 in the ILCD;

   c. the State of Illinois defaulted and failed to appear in 18-L-202 in the Seventh Judicial Circuit of Illinois; and

   d. default was entered against the State of Illinois in the Eastern District of Virginia (20-cv-173).   EXHIBIT #1

   e. default was entered against Joseph F. Dunford Jr. in the Massachusetts Superior Court for Plymouth County in 2183-cv-00257.   EXHIBIT #13

      *See Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004); *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1204

4

(5th Cir. 1975). *See Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005).

11. "In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators, "circumstantial evidence may provide adequate proof of conspiracy." *See Hampton v. Hanrahan*, 600 F. 2d 600 (1979) quoting *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F. 2d 872, 875 (7th Cir. 1971)."

12. Mr. Grant can make a prima facia showing that:

   a. Mr. Grant was convicted of domestic battery in 2003;

| Location | Case No. | Judge | Filing Date | Offense | Mr. Grant's lawyers |
|---|---|---|---|---|---|
| Sangamon County | 2002-CF-001063 | Cadigan | 12/02/2002 | Domestic Battery | Rudolph M. Braud Michael Drake |

   b. Mr. Grant's lawyers in his 2003 domestic battery case, Rudolph M. Braud, approved Mr. Grant's court fee waiver application thirteen (13) years later in 2016 when Mr. Grant filed suit against the DOJ and State of Illinois in the Seventh Judicial Circuit of Illinois (16-MR-643) alleging a vast government conspiracy against Mr. Grant;

   c. Mr. Grant was issued multiple Driving Under the Influence (DUI) tickets in 2009 stemming from one traffic stop;

   d. the Sangamon County State's Attorney's Office filed multiple DUI cases against Mr. Grant stemming from one 2009 traffic stop;

| Case No. | Judge | Ticket Number | File Date | Offense | Case Type | Status | Statute |
|---|---|---|---|---|---|---|---|
| 10-DT-000030 | Madonia | 6248585 | 12/29/09 | DUI/BAC 0.08 | DUI | Disp. | None |

| 10-DT-001754 | Otwell | 6247601 | 11/30/09 | DUI | DUI | Disp. | 625 ILCS 5/11-501(a)(2) |
|---|---|---|---|---|---|---|---|
| 09-TR-047110 | N/A | 6247603 | 11/30/09 | Improper Turn at Intersection | DUI | Disp. | 625 ILCS 5/11-801 |
| 09-TR-047111 | N/A | 6247602 | 11/30/09 | Improper Traffic Lane Usage | DUI | Open | 625 ILCS 5/11-709(a) |
| 09-TR-047112 | N/A | 6247605 | 11/30/09 | Registration Light | DUI | Open | 625 ILCS 5/12-201(c) |
| 09-TR-047113 | N/A | 6247604 | 11/30/09 | Headlight Violation | DUI | Open | 625 ILCS 5/12-211(a) |

e.  the Illinois State Police failed to obtain a warrant to draw Mr. Grant's blood during the 2009 traffic stop;

f.  Seventh Judicial Circuit of Illinois Judge John M. Madonia who presided of Mr. Grant's multiple DUI cases stemming from one 2009 traffic stop approved Mr. Grant's court fee waiver application in 2018 when Mr. Grant filed suit against the U.S. Department of Defense (DoD) alleging a vast government conspiracy against Mr. Grant;

EXHIBIT #2
EXHIBIT #3
g.  Mr. Grant was employed by the State of Illinois for four (4) years;  EXHIBIT #4
EXHIBIT #10

h.  Mr. Grant was denied Federal unemployment benefits in 2015 by the Illinois Department of Employment Security (IDES);   EXHIBIT #5

i.  the DOJ and State of Illinois defaulted in 16-cv-3245 and 17-cv-3261 in the ILCD;

j.  the DOJ defaulted and failed to appear in 19-cv-3001 in the ILCD;

k.  the State of Illinois defaulted and failed to appear in 18-L-202 in the Seventh Judicial Circuit of Illinois; and

l.  default was entered against the State of Illinois in the Eastern District of Virginia (20-cv-173).   EXHIBIT #1

6

    m. default was entered against Joseph F. Dunford Jr. in the Massachusetts Superior

        Court for Plymouth County (2183-cv-00257).    EXHIBIT #13

    n. ILCD Clerk of Court failed to enter default against the DOJ in 16-cv-3245,

        17-cv-3261, and 19-cv-3001;

        1. the Entry of Default (Fed. R. Civ. P. 55(a) is a ministerial act, and not an

           act of discretion.

## FEDERAL OFFICER LIABILITY UNDER 42 U.S.C. 1985(3) and 42 U.S.C. 1983

13. "Yet when federal officials are engaged in a conspiracy with state officials to deprive

    constitutional rights, the state officials provide the requisite state action to make the entire

    conspiracy actionable under section 1983…"When the violation is the joint product of the

    exercise of a State power and of a non-State power then the test under the Fourteenth

    Amendment and §1983 is whether the state or its official played a 'significant' role in the

    result (*See Hampton v. Hanrahan*, 600 F. 2d 600 (1979) quoting *Kletschka v. Driver*)."

14. James A. Baker III, William Pelham Barr, and *Six Known Members* entered into a "joint

    action" with officials and employees of the State of Illinois to deprive Mr. Grant of his

    rights guaranteed by the U.S. Constitution. Officials and employees of the State of

    Illinois played a significant role in depriving Mr. Grant of his U.S. Constitutional rights at

    the direction of James A. Baker III, William Pelham Barr, and *Six Known Members*.

    Therefore, James A. Baker III, William Pelham Barr, and *Six Known Members* are liable

    for suit under 42 U.S.C. 1985(3); 42 U.S.C. 1985(2); and 42 U.S.C. 1983. *See Hampton

    v. Hanrahan*, 600 F. 2d 600 (1979) quoting *Kletschka v. Driver*.

## LACK OF QUALIFIED IMMUNITY

7

15. James A. Baker III, William Pelham Barr, and *Six Known Members* do not possess
   qualified immunity as their actions were in direct violation of the U.S. Constitution.

16. James A. Baker III, William Pelham Barr, and *Six Known Members* do not possess
   qualified immunity as their actions were outside the scope of their employment as
   officers of the U.S. Federal government. *See In re Neagle*, 135 U.S. 1 (1890).

17. "The qualified-immunity inquiry turns on the "objective legal reasonableness" of the
   official's act, *Harlow v. Fitzgerald*, 457 U.S. 800, 819, "assessed in light of the legal rules
   that were 'clearly established' at the time [the action] was taken," *Anderson v. Creighton*,
   483 U.S. 635, 639. If it would have been clear to a reasonable officer that the alleged
   conduct "was unlawful in the situation confronted, "*Saucier v. Katz*, 533 U.S. 194, 202,
   the defendant officer is not entitled to qualified immunity (*Ziglar v. Abassi*, 582 U.S.
   (2017)."

18. "the court has held that qualified immunity protects "all but the plainly incompetent or
   those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). TO
   determine whether a given officer falls into either of those two categories, a court must
   ask whether it would have been clear to a reasonable officer that the alleged conduct "was
   unlawful in the situation he confronted." *Saucier, supra* at 202. If so, then the defendant
   officer must have been either incompetent or else a knowing violator of the law, and this
   not entitled to qualified immunity (*Ziglar v. Abassi*, 582 U.S. (2017)."

## BACKGROUND

19. William Howard Taft IV, Deputy Secretary of the U.S. Department of Defense, facilitated
   the trafficking of Mr. Grant from Air Force Systems Command in Maryland to the
   basement of the Pentagon in Virginia in 1990. *See 18 U.S.C. 1581 - Peonage; See 18*

U.S.C. 1590 - *Trafficking With Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor.*

20. James A. Baker III, Caspar Weinberger, Frank Carlucci, and William Howard Taft IV entered into an agreement to traffick Mr. Grant from Air Force Systems Command in Maryland to the basement of the Pentagon in Virginia in 1990. *See 18 U.S.C. 1581 - Peonage; See 18 U.S.C. 1590 - Trafficking With Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor.*

21. Caspar Weinberger and Frank Carlucci were both retired Secretaries of the U.S. Department of Defense and had no operational authority over the U.S. Department of Defense (DoD). James A. Baker III was the Secretary of the U.S. Department of State, and had no operational authority over the U.S. Department of Defense.

22. William Howard Taft IV, Deputy Secretary of the DoD, recruited Michael Patrick Chamberlain Carns (Director of Joint Staff) James N. Mattis, Joseph F. Dunford Jr., John F. Kelly, and Mark T. Esper to enter into an agreement to unlawfully detain Mr. Grant in the basement of the Pentagon beginning in 1990.   (under armed guard)

23. Between 1990 and 1992, James N. Mattis, Joseph F. Dunford Jr., John F. Kelly, Mark T. Esper, Gregory K. Harris, and Joint Special Operations Command (JSOC) took their official orders from William H. Taft IV (Deputy Secretary) and Michael Patrick Chamberlain Carns (Director of Joint Staff).

24. William Howard Taft IV petitioned President George H.W. Bush to be appointed the United States Permanent Representative to the North Atlantic Treaty Organization (NATO) in 1990, while still serving as Deputy Secretary until the conclusion of President George H.W. Bush's administration in 1993.

9

25. William Howard Taft IV was "offshored." William Howard Taft IV remained as Deputy
Secretary, but was on the Federal payroll as the U.S. Permanent Representative to NATO.
William Howard Taft IV continued to work in the Pentagon until the conclusion of
President George H.W. Bush's administration.

26. William Howard Taft IV had the paperwork for his resignation backdated to make it
appear as though William Howard Taft IV resigned from the DoD prior to Mr. Grant
being trafficked from Air Force Systems Command in Maryland to the basement of the
Pentagon in Virginia in 1990.

27. William Howard Taft IV and Michael Patrick Chamberlain Carns was complicit in
engineering the Evil Enterprise of James A. Baker III, William Pelham Barr, and *Six
Known Members* to deprive Mr. Grant of his U.S. Constitutional rights to give Mr. Grant
legal cause to appear in Federal court.

28. James A. Baker III, William Pelham Barr, William Howard Taft IV, Michael Patrick
Chamberlain Carns, and *Six Known Members* entered into an agreement between 1990
and 1992 to recruit officials and employees of the State of Illinois to deprive Mr. Grant of
his U.S. Constitutional rights at the direction of James A. Baker III, William Pelham Barr,
William Howard Taft IV, Michael Patrick Chamberlain Carns,  and *Six Known Members*.

### EQUITABLE TOLLING

29. Equitable Tolling is applicable:

    a. Mr. Grant was under threat of military force (violence) to not begin his lawsuit
until May of 2016. James A. Baker III, William Pelham Barr, and *Six Known
Members* threatened to physically assault Mr. Grant, and threatened to use
violence against a Judge, if Mr. Grant began his lawsuit prior to 2016; *See*

10

*Ralda-Sanden v. Sanden*, 2013 IL App. (1st) 121117; *See Atwater v. Atwater*, 18 Ill. App. 3d 202 (1974); *See Slavis v. Slavis*, 12 Ill. App. 3d 467 (1973).

b.   the ILCD Clerk of Court was intimidated by *Six Known Members* to not enter default (Fed. R. Civ. P. 55(a) against the DOJ and State of Illinois in:

    1.   16-cv-3245, *Grant v. Kabaker et al.*, *Central Dist. of Illinois*;

    2.   17-cv-3261, *Grant v. Kabaker et al.*, *Central Dist. of Illinois*; and

    3.   19-cv-3001, *Grant v. U.S. Dept. of Defense, Central Dist. of Illinois*.

         See *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

c.   ILCD Judges: Colin S. Bruce (16-cv-3245 and 17-cv-3261) and Joe Billy McDade (19-cv-3001) were intimidated by *Six Known Members* to dismiss Mr. Grant's lawsuit in the ILCD in 2016, which constitutes fraud;

    *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

d.   Seventh Judicial Circuit of Illinois Judge Brian T. Otwell dismissed Mr. Grant's lawsuit (17-MR-754) at the direction of Gregory K. Harris in 2017, which constitutes fraud;

    *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

e.   Seventh Judicial Circuit of Illinois Judge John M. Madonia dismissed Mr. Grant's lawsuit in 2019 at the direction of *Six Known Members*, which constitutes fraud.

## CONTINUING TORT DOCTRINE

30. Equitable Tolling is applicable under the Continuing Violations Doctrine.

31. James A. Baker III, William Pelham Barr, *Six Known Members*, Gregory K. Harris, along with officials and employees of the State of Illinois:

    a.  engaged in a thirty (30) year conspiracy to deprive Mr. Grant of his U.S.

        Constitutional rights acting under color of Federal authority;

    b.  engaged in a twenty-eight (28) year conspiracy to deprive Mr. Grant of his U.S.

        Constitutional rights acting under color of law and authority of the State of

        Illinois by entering into a "joint action" with officials and employees of the State

        of Illinois beginning in 1992;

    c.  Ryan Croke, Illinois Governor Patrick J. Quinn's Deputy Chief of Staff and Chief

        of Staff (CoS) entered into an agreement with Gregory K. Harris beginning in

        2010 to conspire against Mr. Grant at the direction of Gregory K. Harris;

    d.  Patrick J. Quinn, Governor of Illinois from 2009 until 2015, entered into an

        agreement with Ryan Croke and Cheryl Byers (Patrick J. Quinn's 2014 Campaign

        Manager) to conspire against Mr. Grant beginning in 2014.

        *See Field v. First Nat. Bank of Harrisburg*, 619 N.E. 2d 1296 (Ill. App. Ct. 1993).

        *See Feltmeier v. Feltmeier*, 798 N.E. 2d 75 (Ill. 2003). *See Pinkerton v. United*

        *States*, 328 U.S. 640 (1946).

## CAUSES OF ACTIONS - COUNTS OF COMPLAINT

32. Mr. Grant has a cause of action against James A. Baker III, William Pelham Barr and *Six*

    *Known Members* for thirty (30) years of (count I) unlawful detainment/unlawful restraint

    and (count II) unreasonable seizure, and violation of Due Process (count III) actionable

    under:

    a.  District of Columbia common law and Illinois common law; and

    b.  U.S. Const. Amend. IV - unreasonable searches and seizures.

33. Mr. Grant has a cause of action against James A. Baker III, William Pelham Barr and *Six Known Members* for (count IV) Invasion of Privacy and (count V) unreasonable searches actionable under:

    a. District of Columbia common law and Illinois common law; and

    b. U.S. Const. Amend. IV - unreasonable searches and seizures.

34. Mr. Grant has a cause of action (count VI) against James A. Baker III, William Pelham Barr, and *Six Known Members* for violating Mr. Grant's right to be free from cruel and unusual punishment as prohibited by U.S. Const. Amend. VIII.

35. Mr. Grant has a cause of action (count VII) against James A. Baker III, William Pelham Barr, and *Six Known Members* for violating Mr. Grant's U.S. Const. Amend. VI right to adequate counsel.

36. Mr. Grant has a cause of action (count VIII) against James A. Baker III, William Pelham Barr, and *Six Known Members* for intimidation (*See* 720 ILCS 5/12-6(a)(1).

37. Mr. Grant has a cause of action (count IX) against James A. Baker III, William Pelham Barr, and *Six Known Members* for retaliatory discharge and (count X) Illinois Whistleblower Protection Act under:

    a. District of Columbia common law and Illinois common law; and

    b. Illinois Whistleblower Protection Act - 5 ILCS 430/15-10.

38. Mr. Grant has a cause of action (count XI) against James A. Baker III, William Pelham Barr, and *Six Known Members* for negligent entrustment actionable under:

    a. District of Columbia common law and Illinois common law.

39. Mr. Grant has a cause of action (count XII) against James A. Baker III, William Pelham Barr, and *Six Known Members* for assault and battery actionable under:

a. District of Columbia common law and Illinois common law.

40. Mr. Grant has a cause of action (count XIII) against James A. Baker III, William Pelham Barr, and *Six Known Members* for authorized assault actionable under:

a. District of Columbia common law and Illinois common law.

41. Mr. Grant has a cause of action (count XIV) against James A. Baker III, William Pelham Barr, and *Six Known Members* for violating Mr. Grant's U.S. Const. Amend. I right to Free Speech .

42. Mr. Grant has a cause of action (count XV) against James A. Baker III, William Pelham Barr, and *Six Known Members* for depriving Mr. Grant of his right to not be a slave or be an involuntary servant mandated by U.S. Const. Amend. XIII.

43. Mr. Grant has a cause of action (count XVI) against James A. Baker III, William Pelham Barr, and *Six Known Members* pursuant to: *18 U.S.C. 1595 - Peonage, Slavery, and Human Trafficking* and *D.C. Code 22-1840 - Human Trafficking - Civil Action.*

## BACKGROUND

44. James A. Baker III, William Hoard Taft IV, Michael Patrick Chamberlain Carns, and William Pelham Barr entered into an agreement with *Six Known Members* to unlawfully detain Mr. Grant in Illinois for nearly thirty (30) years under threat of military force (violence) beginning in 1992 to be the DoD's Witness to the 9/11 Terrorist Attacks.

a. Giving Mr. Grant a cause of action against James A. Baker III, William Pelham Barr, and *Six Known Members* pursuant to:

1. unreasonable searches and seizure (*See Bivens . Six Unknown Named Agents*, 403 U.S. 388 (1971); deprivation of Liberty without Due Process

(*See Davis v. Passman*, 442 U.S. 228 (1979); and cruel and unusual

punishment (*See Carlson v. Green*, 446 U.S. (1980).

2.   18 U.S.C. 1598 - Forced Labor;

3.   18 U.S.C. 1581 - Peonage; Obstructing Enforcement

45. James A. Baker III, William Pelham Barr, and *Six Known Members* entered into an

agreement with Illinois Governor James 'Jim' Edgar in 1992 to unlawfully detain in

Illinois. Illinois Governor James 'Jim' Edgar agreed to have the State of Illinois provide

employment opportunities ("state jobs") and tuition waivers to individuals who reported

the words and actions of Mr. Grant to Gregory K. Harris, and conspired against Mr. Grant

at the direction of Gregory K. Harris. *See Katz v. United States*, 389, U.S. 347 (1967).

a.   Giving Mr. Grant a cause of action against James A. Baker III, William Pelham

Barr, and *Six Known Members* pursuant to:

1.   unreasonable searches and seizure (*See Bivens v. Six Unknown Named

Agents*, 403 U.S. 388 (1971).

46. James A. Baker III, William Pelham Barr, and *Six Known Members* trafficked Mr. Grant

to Springfield, Illinois from the Pentagon in Virginia in 1992, and left Mr. Grant with Dr.

Bill Grant and Armenta Johnson to be: (a) beaten; (b) endure psychological warfare; and

(c) the DoD's Witness to the 9/11 Terrorist Attacks.

a.   Giving Mr. Grant a cause of action against James A. Baker III, William Pelham

Barr, and *Six Known Members* pursuant to:

1.   18 U.S.C. 1589 - Forced Labor;

2.   18 U.S.C. 1590 - Trafficking with Respect to Peonage, Slavery,

Involuntary Servitude, or Forced Labor;

3. 18 U.S.C. 1581 - Peonage; Obstructing Enforcement;

4. 18 U.S.C. 1593(a) - Benefitting Financially From Peonage, Slavery, and Trafficking in Persons;

5. D.C. Code 22-1832(a) - Forced Labor;

6. D.C. Code 22-1833(1) - Trafficking in Labor or Commercial Sex Acts;

7. D.C. Code 22-1836 - Benefitting financially from human trafficking; and

8. D.C. Code 22-1840 - Human Trafficking - Civil Action.

## UNLAWFUL SEIZURE (COUNT I)

## UNLAWFUL DETAINMENT (COUNT II)

## UNLAWFUL IMPRISONMENT (COUNT III)

## COUNT I

47. Mr. Grant has a cause of action against the defendants, James A. Baker III, William Pelham Barr, and *Six Known Members* for thirty (30) years of unlawful seizure, unlawful detainment, and unlawful imprisonment. *See Heck v. Humphrey*, 512 U.S. 477, 484. *See Florida v. Bostick*, 501 U.S. 429 (1991).                    (under armed guard)
                                                                                                v

48. James A. Baker III, Frank Carlucci, and Caspar Weinberger unlawfully detained Mr. Grant at Air Force Systems Command for three (3) weeks in July of 1990. *See Heck v. Humphrey*, 512 U.S. 477, 484. *See Florida v. Bostick*, 501 U.S. 429 (1991).

49. James A. Baker III, William Pelham Barr, and *Six Known Members* unlawfully detained Mr. Grant in Illinois under threat of military force (violence) for nearly thirty (30) years without legal authority. *See Heck v. Humphrey*, 512 U.S. 477, 484. *See Florida v. Bostick*, 501 U.S. 429 (1991).

## COUNT II

16

50. James A. Baker III, William Pelham Barr, and *Six Known Members* detained Mr. Grant in

the basement of the Pentagon in Virginia in 1990 until 1992 in violation of Mr. Grant's

right under U.S. Const. Amend. IV to be free from "unreasonable searches and seizures.

James A. Baker III, William Pelham Barr, and *Six Known Members* were without legal

cause to detain Mr. Grant. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S.

388 (1971).

## COUNT III

51. James A. Baker III, William Pelham Barr, *Six Known Members*, and Gregory K. Harris

have unlawful detained Mr. Grant in Illinois for nearly thirty (30) years without legal

cause in violation of Mr. Grant's U.S. Const. Amend. V right to not be deprived of

Liberty without Due Process. *See Davis v. Passman*, 442 U.S. 228 (1979).

52. The detention of Mr. Grant has been without Mr. Grant's consent. *See Brower v. County

of Inyo*, 489 U.S. 593 (1989).

## INVASION OF PRIVACY (COUNT IV)

## UNLAWFUL SURVEILLANCE COUNT (COUNT V)

## COUNT IV

53. James A. Baker III, William Pelham Barr, and *Six Known Members* violated Mr. Grant's

right to privacy (intrusion upon seclusion) by keeping Mr. Grant under satellite

surveillance for nearly thirty (30) years allowing James A. Baker III, William Pelham

Barr, and *Six Known Members* to know exactly where Mr. Grant was, who Mr. Grant was

communicating with, and reducing Mr Grant's ability to leave Springfield, Illinois. *See

Zboralski v. Monahan*, 446 F. Supp. 2d 879 (N.D. Ill. 2006). *See Johnson v. K Mart*

*Corp.*, 723 N.E. 2d 1192 (Ill. Ct. App. 2000). *See Melvin v. Burling*, 490 N.E. 2d. 1011 (Ill. App. Ct. 1986).

54. James A. Baker III, William Pelham Barr, and *Six Known Members* violated Mr. Grant's right to privacy by "hacking" Mr. Grant's landline phone, cellular phone, and computer tracking/recording/documenting Mr. Grant's internet use for more than fifteen (15) years.

55. James A. Baker III, William Pelham Barr, and *Six Known Members* violated Mr. Grant's right to privacy by placing Gregory K. Harris on the payroll of the ILCD U.S. Attorney's Office to unlawfully surveil Mr. Grant by entering into an agreement with Illinois Governor James 'Jim' Edgar for the State of Illinois to provide "state jobs" and tuition waivers to individuals who reported the words and actions of Mr. Grant to Gregory K. Harris. Gregory K. Harris provided "state jobs" and tuition waivers from 1992 until 2015 to individuals who reported the words and actions of Mr. Grant to Gregory K. Harris for Gregory K. Harris to record, and report to James A. Baker III, William Pelham Barr, and *Six Known Members*. *See Johnson v. K Mart Corp.*, 723 N.E. 2d 1192 (Ill. Ct. App. 2000). *See Melvin v. Burling*, 490 N.E. 2d. 1011 (Ill. App. Ct. 1986). *See Katz v. United States*, 389 U.S. (1967).

56. "Having decided that a cause of action for invasion of privacy for the intrusion upon the seclusion of another does exist in Illinois, we must not decide whether the plaintiff's have sufficiently pled facts that support such an action. In order to state such a cause of action, the facts which must be alleged are (1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion must be offensive or objectionable to a reasonable man; (3) the matter upon which the intrusion occurs must be private; and (4) the intrusion causes anguish and suffering. *See Prosser, Torts, sec.* 117, at 808-12 (4th ed. 1971; *Bank*

*of Indiana v. Tremunde* (1977), 50 Ill. App. 3d 480, 365 N.E. 2d 295. (*Melvin v. Burling*, 490 N.E. 2d. 1011 (Ill. App. Ct. 1986)."

57. James A. Baker III, William Pelham Barr, and *Six Known Members* violated Mr. Grant's U.S. Const. Amend. IV right to be free from "unreasonable searches and seizures" by keeping Mr. Grant under satellite surveillance for nearly thirty (30) years allowing James A. Baker III, William Pelham Barr, and *Six Known Members* to know exactly where Mr. Grant was at all times, and who Mr. Grant was interacting with, reducing Mr. Grant's ability to leave Springfield, Illinois. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

### COUNT V

58. James A. Baker III, William Pelham Barr, and *Six Known Members* violated Mr. Grant's U.S. Const. Amend. IV right to be free from "unreasonable searches and seizures" by "hacking" Mr. Grant's landline phone, cellular phone, and computer for more than fifteen (15) years recording Mr. Grant's internet use and phone conversations. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See Katz v. United States*, 389 U.S. (1967).

59. James A. Baker III, William Pelham Barr, and *Six Known Members* violated Mr. Grant's U.S. Const. Amend. IV right to be free from "unreasonable searches and seizures" by placing Gregory K. Harris on the ILCD U.S. Attorney's Office payroll to unlawfully surveil Mr. Grant by bribing Mr. Grant's family, peers, teachers, co-workers, and supervisors to report the words and actions of Mr. Grant for more than twenty-three (23) years. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See Katz v. United States*, 389 U.S. (1967).

## CRUEL AND UNUSUAL PUNISHMENT (COUNT VI)

60. Mr. Grant was the victim of assault and battery under the guise of medical treatment

    coordinated and supervised by Gregory K. Harris, an agent of *Six Known Members*,

    which is a cruel and unusual punishment prohibited by U.S. Const. Amend. VIII (*See*

    *Carlson v. Green*, 446 U.S. 14 (1980):

    a. Gregory K. Harris directed Mr. Grant's dentists to drill the enamel off Mr. Grant's

       teeth beginning in 1992;

    b. Gregory K. Harris directed Mr. Grant's optometrist to give Mr. Grant an incorrect

       prescription lens to diminish Mr. Grant's vision in 1995;

    c. Gregory K. Harris directed Mr. Grant's orthodontist to drill the enamel off Mr.

       Grant's teeth from 1998 to 2000;

    d. Gregory K. Harris directed Mr. Grant's chiropractor to break Mr. Grant's shoulder

       blade in 2012, or be "set-up for a motor vehicle accident in 2012, where Mr. Grant

       would lose his arm;

61. Mr Grant was intimidated to stab Dr. Bill Grant in 2002 under threat that failure to

    comply would result in *Six Known Members* killing Dr. Bill Grant. *See Carlson v. Green*,

    446 U.S. 14 (1980).

62. Mr. Grant was intimidated to "act as a homosexual" for seven (7) years under threat if

    Mr. Grant did not comply would result in *Six Known Members* sending someone to rape

    Mr. Grant. Mr. Grant was intimidated to "act as a homosexual" from December 9, 2008

    until May of 2016. *See Carlson v. Green*, 446 U.S. 14 (1980).

20

63. Mr. Grant has been unlawfully detained by James A. Baker III, William Pelham Barr, and *Six Known Members* under threat of military force for thirty (30) years without legal cause.

### DENIAL OF ADEQUATE COUNSEL (COUNT VII)

64. Gregory K. Harris undermined Mr. Grant's legal defense by colluding with Mr. Grant's lawyers (Rudolph M. Braud and Michael Drake) in 2003 when Mr. Grant was charged with domestic battery for stabbing Dr. Bill Grant.

65. Rudolph M. Braud and Michael Drake were aware Mr. Grant had been intimidated by James A. Baker III, William Pelham Barr, and *Six Known Members* to stab Dr. Bill Grant.

66. Gregory K. Harris undermined Mr. Grant's legal defense for Driving Under the Influence (DUI) by colluding with Mr. Grant's lawyers (Patrick T. Timoney, John Sharp, and Michael Harmon) in 2010.

67. Patrick T. Timoney, John Sharp, and Michael Harmon refused/failed to file a Motion to Exclude/ Motion to Suppress the Blood Alcohol Content (BAC) report as part of an agreement with Gregory K. Harris to have Mr. Grant prosecuted for DUI in violation of Mr. Grant's right to (adequate) counsel mandated by U.S. Const. Amend. VI.

    a. The Illinois State Police failed to obtain a warrant to draw Mr. Grant's blood in violation of Mr. Grant's U.S. Const. Amend. IV right to be free from unreasonable searches and seizures. *See Missouri v. McNeely*, 569 U.S. 141 (2013).

    b. The Blood Alcohol Report (BAC) was in-admissible in a court of law. Illinois State Police Trooper Tyler Price failed to obtain a warrant to draw Mr. Grant's blood. There was no property damage or individuals suffering from injuries to give the police probable cause to conduct a blood draw.

68. Mr. Grant was sober during the 2009 traffic stop initiated by Illinois State Police Trooper Tyler Price at the direction of Gregory K. Harris and *Six Known Members*.

## INTIMIDATION (COUNT VIII)

69. Mr. Grant has a cause of action against James A. Baker III, William Pelham Barr, and *Six Known Members* for intimidation - *720 ILCS 5/12-6(a)(1)* .

70. Mr. Grant was intimidated by James A. Baker III, William Pelham Barr, and *Six Known Members* to stab Dr. Bill Grant in 2002 under threat of Mr. Grant not complying would result in the *Six Known Members* sending a "Special Operations Soldier" to kill Dr. Bill Grant.

71. Mr. Grant was intimidated to act as a homosexual for seven (7) years under threat of rape communicated by James A. Baker III, William Pelham Barr, *Six Known Members*, and Gregory K. Harris. Mr. Grant was intimidated (forced) to act as a homosexual from December 9, 2008 until May of 2016. *See 720 ILCS 5/12-6(a)(1)* - Intimidation.

72. Mr. Grant was intimidated to remain in Illinois for nearly thirty (30) years under the threat of military force (violence) by James A. Baker III, William Pelham Barr, and *Six Known Members* to bring suit against the U.S. Department of Justice and State of Illinois in 2016 to gain his freedom.

## RETALIATORY DISCHARGE (COUNT IX)

## WHISTLEBLOWER PROTECTION ACT (COUNT X)

### COUNT IX

73. Mr. Grant has a cause of action against Patrick J. Quinn, Ryan Croke, James A. Baker III, William Pelham Barr, and *Six Known Members* for retaliatory discharge:

a.  Illinois Governor Patrick J. Quinn and Ryan Croke (Patrick J. Quinn's Chief of
    Staff) terminated (failed to add to payroll) Mr. Grant's employment with the State
    of Illinois in 2014 as retaliation for Mr. Grant filing two complaints with the State
    of Illinois in 2012; *See Kelsay v. Motorola*, 74 Ill. 2d 172 (1978).

b.  Patrick J. Quinn and Ryan Croke terminated (failed to add to payroll) Mr. Grant in
    2014 in direction violation of the Illinois Whistleblower Protection Act (5 ILCS
    430/15-10); and

c.  The Illinois Whistleblower Protection Act is a clearly mandated public policy.

d.  Ryan Croke's actions against Mr. Grant were directed by Gregory K. Harris, as
    Ryan Croke (as Patrick J. Quinn's Deputy Chief of Staff in 2010) entered into an
    agreement with Gregory K. Harris, an agent of *Six Known Members*, to conspire
    against Mr. Grant at the direction of Gregory K. Harris, and to deprive Mr. Grant
    of his U.S. Constitutional rights (using his position as Patrick J. Quinn's Deputy
    Chief of Staff) at the direction of Gregory K. Harris;

e.  James A. Baker III, William Pelham Barr, and *Six Known Members* are liable for
    the actions of Patrick J. Quinn and Ryan Croke under the Illinois Whistleblower
    Protection Act (5 ILCS 430/15/-25). *See Fellhauer v. City of Geneva*, 142 Ill. 2d.
    495 (1991). *See Kelsay v. Motorola*, 74 Ill 2d. (1978).

74. Patrick J. Quinn is liable (respondeat-superior) for Ryan Croke's failure to add Mr. Grant
    to the payroll of the Illinois Governor's Office in 2014 as retaliation for Mr. Grant filing a
    civil rights complaint and an ethics complaint with the State of Illinois in 2012. *See
    Merlo v. Public Service Co.*, 381 Ill. 300 45 N.E. 2d 665 (1942). *See Gundich v.*

*Emerson-Comstock Co.*, 21 Ill. 2d 117 (1960). *See Woods v. Cole*, 693 N.E. 333 (Ill. 1998).

75. Patrick J. Quinn is liable for Ryan Croke and Cheryl Byers (Patrick J. Quinn's Campaign Manager) directing officials and employees of the Illinois Department of Employment Security (IDES) to deny Mr. Grant Federal unemployment benefits as retaliation for Mr. Grant filing an ethics complaint and a civil rights complaint with the State of Illinois in 2012. *See Merlo v. Public Service Co.*, 381 Ill. 300,45 N.E. 2d 665 (1942). *See Gundich v. Emerson-Comstock Co.*, 21 Ill. 2d 117 (1960), *See Woods v. Cole*, 693 N.E. 333 (Ill. 1998).        EXHIBIT #5

76. The *Six Known Members* entered a "joint action" with IDES Administrative Law Judge John Schellenberg to deny Mr. Grant Federal unemployment benefits in 2015 as retaliation for Mr. Grant filing a civil rights complaint and an ethics complaint with the State of Illinois in 2012, and to cause Mr. Grant:                EXHIBIT #5

   a.   financial hardship;

   b.   to search for employment in 2015 to demonstrate to the court Mr. Grant has been BLACKLISTED; and

   c.   to enter Federal court without financial resources requiring:

      1.   Mr. Grant to file his lawsuit as a poor person seeking leave to proceed in forma pauperis; and

      2.   Mr. Grant's lawsuit to receive additional scrutiny by a judge for screening for frivolity.

         *See Holiday Magic, Inc. v. Scott*, 282 N.E. 2d 452 (Ill. App. Ct. 1972).

COUNT X

24

77. Mr. Grant has a claim pursuant to the Whistleblower Protection Act (5 ILCS 430/15-25):

    a. officials and employees of the State of Illinois took retaliatory action against Mr. Grant in response to Mr. Grant filing an ethics complaint and a civil rights complaint with the State of Illinois in 2012:

        1. Mr. Grant endured a hostile work environment;

        2. Mr. Grant's work products were sabotaged;

        3. Mr. Grant was geographically relocated;

        4. Mr. Grant was slandered;

        5. Mr. Grant was given work assignments below his pay grade;

        6. Mr. Grant has a promotion rescinded;

        7. Ryan Croke, Patrick J. Quinn's Chief of Staff in 2014, failed to add Mr. Grant to payroll when Mr. Grant was transferred from the Illinois Department of Transportation (IDOT) to the Illinois Governor's Office in 2014 when Mr. Grant was being "laid-off" under the guise of a material reorganization; EXHIBIT #6 EXHIBIT #7

        8. Mr. Grant was wrongfully denied Federal unemployment benefits by officials and employees of the Illinois Department of Employment Security (IDES) at the direction of Ryan Croke (Patrick J. Quinn's Chief of Staff) and Cheryl Byers (Patrick J. Quinn's Campaign Manager); EXHIBIT #5

        9. IDES Administrative Law Judge John Schellenberg denied Mr. Grant Federal unemployment benefits after being intimidated by *Six Known Members*.

25

78. In 2015, Mr. Grant found himself Blacklisted by officials and employees of the State of
Illinois at the direction of Cheryl Byers, Ryan Croke, Patrick J. Quinn, Gregory K.
Harris, and *Six Known Members*.

79. Mr. Grant's Whistleblower Protection Act (5 ILCS 430/15-25) claim is not barred by the
statute of limitations, as Mr. Grant first filed suit against the DOJ and State of Illinois in
2016, and Mr. Grant's lawsuit (16-cv-3245) was dismissed due to fraud by James A.
Baker III, William Pelham Barr, and *Six Known Members* intimidating ILCD Judge Colin
S. Bruce. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

80. Mr. Grant's state law claims were removed to Federal court in 2016, while a case is
pending in Federal court, the statute of limitations is tolled.

81. Mr. Grant's lawsuit has been pending in Federal court for five (5) years. See *Artis v.
District of Columbia*, 135 A. 2d 334 (D.C. 2016).

## NEGLIGENT ENTRUSTMENT (COUNT XI)

82. William Pelham Barr, Attorney General of the United States (AGUSA) under President
George H.W. Bush negligently entrusted Gregory K. Harris with the power and authority
of the ILCD U.S. Attorney's Office and ILCD Federal Bureau of Investigation (FBI) to
deprive Mr. Grant of his U.S. Constitutional rights as part of a conspiracy engineered by
James A. Baker III, William Pelham Barr, and *Six Known Members*. *See Norskog v. Pfiel*,
197 Ill. 2d. 60 (2001).

83. The elements of negligent entrustment are:

    a. the making available to another a chattel which the supplier;

    b. knows or should have known the user is likely to use in a manner involving risk
or physical harm to others; and

    c.  the supplier should expect to be endangered by its use

       *See Mackey v. Dorsey,* 104 Md. App. 250, 655 A. 2d 1333, 1337 (1995)

84. "If the supplier knows or should know of the entrustee's propensities to use the chattel in an improper or dangerous manner, the entrustor owes a duty to foreseeable parties to withhold the chattel from the entrustee (*See Herbert v. Whittle*, 69 Md. App. 273, 517 A. 2d 358, 361, (1986)"

85. William Pelham Barr, AGUSA, owed Mr. Grant a duty of care to not entrust Gregory K. Harris with the power and resources of the ILCD U.S. Attorney's Office and ILCD FBI to intentionally assault and deprive Mr. Grant of his U.S. Constitutional rights.

86. Michael Patrick Chamberlain Carns and William Howard Taft IV are liable for the actions of William Pelham Barr and Gregory K. Harris as a joint tortfeasor in the conspiracy engineered by James A. Baker III, William Pelham Barr, and *Six Known Members. See Pinkerton v. United States,* 328 U.S. 640 (1946). *See Norskog v. Pfiel*, 197, 197 Ill. 2d. 60 (2001). *See Woods v. Cole,* 693 N.E. 2d 333 (Ill. 1998).

## ASSAULT AND BATTERY (COUNT XII)

87. Mr. Grant has a cause of action against James A. Baker III, William Pelham Barr, and *Six Known Members* for civil battery. The elements of civil battery are:

    a.  the willful touching of another person;

    b.  intended to cause an unpermitted act; and

    c.  absence of victim's consent.

      *See Pechan v. Dynapro, Inc.*, 622 N.E. 2d 108 (Ill. App. Ct. 1993).

88. The Illinois Compiled Statutes defines battery as: a person commits battery if he or she knowingly without legal justification by any means

    a.  causes bodily harm to an individual or

    b.  makes physical contact of an insulting or provoking nature with an individual.

    *See 720 ILCS 5/12-3* - Battery

89. Mr. Grant has a cause of action against James A. Baker III, William Pelham Barr, and *Six Known Members* for assault. The elements of assault include:

    a.  intentional , unlawful offer of corporal injury by force, or force unlawfully directed;

    b.  to create a well-founded fear of imminent peril; and

    c.  the apparent present ability to effectuate the attempt if nor prevented.

    *See Parrish v. Donahue*, 443 N.E. 2d 786 (Ill. App. Ct. 1982).

90. The Illinois Compiled Statutes defines assault as:a person commits assault when, without lawful authority, he or she knowingly engages in conduct which places another in reasonable apprehension of receiving a battery.

    *See 720 ILCS 5/12-1.* Assault

91. Mr. Grant was the victim of assault and battery at the direction and coordination of Gregory K. Harris, an agent of *Six Known Members*:

    a.  Gregory K. Harris directed Mr. Grant's dentists to drill the enamel off Mr. Grant's teeth beginning in 1992;

    b.  Gregory K. Harris directed Mr. Grant's optometrist to give Mr. Grant an incorrect prescription lens to diminish Mr. Grant's vision in 1995;

    c.  Gregory K. Harris directed Mr. Grant's orthodontist to drill the enamel off Mr. Grant's teeth from 1998 to 2000;

d. Gregory K. Harris directed Mr. Grant's chiropractor to break Mr. Grant's shoulder blade in 2012, or be "set-up for a motor vehicle accident in 2012, where Mr. Grant would lose his arm; and

e. ISP Trooper Tyler Price extracted Mr. Grant's blood without a warrant, the needle penetrating Mr. Grant's body constitutes battery.

See *Pechan v. Dynapro, Inc.* 622 N.E. 2d 108 (Ill. App. Ct. 1993). *See Missouri v. McNeely*, 569 U.S. 141 (2013).

### AUTHORIZED ASSAULT (COUNT XIII)

92. James A. Baker III, William Pelham Barr, and *Six Known Members* authorized the assault and battery of Mr. Grant, which was coordinated by Gregory K. Harris. *See Collier v. Wagner Castings Co.*, 408 N.E. 2d 198 (Ill. 1980). *See Jablonski v. Multack*, 380 N.E. 2d 924 (Ill. App. Ct. 1978). *See Heskett v. Fisher Laundry & Cleaners Co.*, 230 S.W. 2d 28 (Ark. 1950).

a. Gregory K. Harris directed Mr. Grant's dentists to drill the enamel off Mr. Grant's teeth beginning in 1992;

b. Gregory K. Harris directed Mr. Grant's optometrist to give Mr. Grant an incorrect prescription lens to diminish Mr. Grant's vision in 1995;

c. Gregory K. Harris directed Mr. Grant's orthodontist to drill the enamel off Mr. Grant's teeth from 1998 to 2000;

d. Gregory K. Harris directed Mr. Grant's chiropractor to break Mr. Grant's shoulder blade in 2012, or be "set-up for a motor vehicle accident in 2012, where Mr. Grant would lose his arm; and

e. Illinois State Police (ISP) Trooper Tyler Price extracted Mr. Grant's blood without a warrant, the needle penetrating Mr. Grant's body constitutes battery. ISP Trooper Tyler Price "stopped" Mr. Grant in 2009 under the guise of an improper lane change, and

See *Pechan v. Dynapro, Inc.* 622 N.E. 2d 108 (Ill. App. Ct. 1993). *See Missouri v. McNeely,* 569 U.S. 141 (2013).

## RESPONDEAT SUPERIOR

93. William Pelham Barr is liable for the actions of Gregory K. Harris. William Pelham Barr, as a member of the conspiracy engineered by James A. Baker III, William Howard Taft IV, and the *Six Known Members*:

   a. placed Gregory K. Harris on the payroll of the ILCD U.S. Attorney's Office to illegally surveil and conspire against Mr. Grant;

   b. William Pelham Barr directed the ILCD U.S. Attorney's Office and ILCD Federal Bureau of Investigation to cooperate with Gregory K. Harris' implementation of the conspiracy to deprive Mr. Grant of his U.S. Constitutional rights masterminded by James A. Baker III, William Pelham Barr, and himself (William Howard Taft IV);

   c. acquired the cooperation of Illinois Governor James 'Jim' Edgar in providing Gregory K. Harris with "state jobs" and tuition waivers to distribute to individuals who conspired against Mr. Grant at the direction of Gregory K. Harris. *See Norskog v. Pfiel,* 197 Ill. 2d. 60 (2001).

94. James A. Baker III, William Pelham Barr, and *Six Known Members* are liable for the unlawful and conspiratorial actions of Gregory K. Harris against Mr. Grant under respondeat-superior (vicarious liability):

    a.   Gregory K. Harris, is an agent of William Pelham Barr, and *Six Known Members*;

    b.   Gregory K. Harris took his directions ("orders") from *Six Known Members*;

    c.   Gregory K. Harris was on the payroll of the ILCD U.S. Attorney's Office beginning in 1992;

    d.   Gregory K. Harris was paid through the ILCD U.S. Attorney's Office 'regular' payroll;

    e.   Gregory K. Harris was provided office space in the ILCD U.S. Attorney's Office by William Pelham Barr;

    f.   William Pelham Barr directed the ILCD U.S. Attorney's Office and the ILCD FBI to cooperate with Gregory K. Harris' unlawful endeavor (Evil Enterprise);

    g.   William Pelham Barr, James A. Baker III, and *Six Known Members* acquired the cooperation of Illinois Governor James 'Jim' Edgar in 1992 in their Evil Enterprise to unlawfully detain Mr. Grant in Illinois, and to deprive Mr. Grant of his U.S. Constitutional rights under the law and authority of the State of Illinois

    h.   William Pelham Barr and *Six Known Members* had the ability to terminate Gregory K. Harris' employment through the Attorney General of the United States, and through the ILCD U.S. Attorney.

    i.   William Pelham Barr returned to the position of Attorney General of the United States in 2019, and took no action to end the conspiracy against Mr. Grant. *See Merlo v. Public Service Co.*, 381 Ill. 300, 45 N.E. 2d 665 (1942).

*See Dundich v. Emerson-Comstock Co.*, 21 Ill. 2d 117 (1960).

## WHISTLEBLOWER RETALIATION - U.S. CONST. AMEND. I

## COUNT XIV

95. James A. Baker III, William Pelham Barr, and *Six Known Members* acted through officials and employees of the State of Illinois to violate Mr. Grant's U.S. Const. Amend. I right to Free Speech by retaliating against Mr. Grant for filing an ethics complaint and a civil rights complaint with the State of Illinois in 2012. See *Pickering v. Board of Education*, 391 U.S. 563 (1968). *See Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172 (1978). *See Hampton v. Hanrahan*, 600 F. 2d 600 (1979).

96. Mr. Grant filed an ethics complaint in 2012 against Deirdre 'D.K.' Hirner with the Office of the Executive Inspector General (OEIG):

    a.  Deirdre 'D.K.'' Hirner (Chief of Staff to the Illinois Lieutenant Governor in 2011) was reporting to the Illinois General Assembly, as part of the budgetary process, the Office of the Illinois Lieutenant Governor was administering programs that were simultaneously being removed from the jurisdiction (administration) of Office of the Illinois Lieutenant Governor to increase the appropriation of the Office of the Illinois Lieutenant Governor:

        1.  Deirdre 'D.K.' Hirner was attempting to perpetrate fraud against the Illinois General Assembly;

        2.  Deirdre 'D.K.' Hirner was attempting to perpetrate fraud against the Illinois General Assembly at the direction of Gregory K. Harris;

      3.  Gregory K. Harris and *Six Known Members* wanted Mr. Grant to have a reason to file an ethics complaint, and reason to retaliate against Mr. Grant;

      4.  government fraud is a matter of public concern;

    b.  Donald Kupferschmidt (Mr. Grant's supervisor at the Illinois Department of Transportation) intimidated Mr. Grant to not file a civil rights complaint with the IDOT in 2012;

    c.  Donald Kupferschmidt intimidating Mr. Grant to not file a civil rights complaint or cooperate with the investigation of a civil rights complaint under the threat of retaliation;

    d.  Mr. Grant filed a civil rights complaint with the Illinois Department of Transportation (IDOT) in 2012 for Donald Kupferschmidt intimidating Mr. Grant:

      1.  intimidation is against the law in Illinois (*See* 720 ILCS 5/12-6);

      2.  intimidation of aggrieved parties (victims of racial discrimination, sexual harassment, political affiliation discrimination) is a matter of public concern, and has a history in Springfield, Illinois and in Illinois.

97. Mr. Grant endured a hostile work environment, work products being sabotaged, slander, geographic relocation, being assigned job tasks below Mr. Grant's paygrade, a negative performance evaluation, a rescinded promotion, failure to be added to the payroll of the Illinois Governor's Office in 2014, wrongful denial of Federal unemployment benefits in 2015, and Mr. Grant being BLACKLISTED in 2015 in response to Mr. Grant filing an ethics complaint and a civil rights complaint in 2012 with the State of Illinois.

98. The retaliatory actions of officials and employees of the State of Illinois were part of a "joint action" with Gregory K. Harris, an agent of *Six Known Members*. *See Hampton v. Hanrahan*, 600 F. 2d 600 (1979).

99. Mr. Grant filed a lawsuit against the DOJ and State of Illinois in 2016 alleging gross violations of Mr. Grant's U.S. Constitutional rights. The *Six Known Members* intimidated ILCD Judge Colin S. Bruce (16-cv-3245) to dismiss Mr. Grant's lawsuit. *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

100.   In response to Mr. Grant filing a lawsuit in 2016 against the DOJ and State of Illinois, *Six Known Members* attempted to assassinate Mr. Grant in violation of:

    a.   Mr. Grant's U.S. Const. Amend. V right to Due Process prior to being deprived of his life (*See Davis v. Passman*, 442 U.S. 228 (1979); and

    b.   Mr. Grant's U.S. Const. Amend. VIII right to be free from cruel and unusual punishment (*See Carlson v. Green*, 446 U.S. 14 (1980).

101.   Mr. Grant survived *Six Known Members* attempt to assassinate Mr. Grant in Maryland in 2017, and *Six Known Members* multiple attempts to assassinate Mr. Grant in his home in Springfield, Illinois in 2017.

102.   Mr. Grant refiled his lawsuit multiple times against the DOJ and State of Illinois in 2017. James A. Baker III and *Six Known Members* attempted to assassinate Mr. Grant multiple times in 2018 in response to Mr. Grant continuing to file administrative complaints with the State of Illinois and U.S. Federal government pertaining to the unlawful and unconstitutional actions of James A. Baker III, William Pelham Barr, *Six Known Members*, and officials and employees of the State of Illinois.

103.    It is a matter of public concern that James A. Baker III, Caspar Weinberger, and Frank

Carlucci siphoned two billion dollars ($2,000,000,000.00) from the Strategic Defense

Initiative between 1985 and 1990 to genetically-engineer Mr. Grant.

104.    It is a matter of public concern that James A. Baker III, William Pelham Barr, and *Six

Known Members* unlawfully detained a citizen of the United States in the basement of the

Pentagon for two and a half (2.5) years without probable cause.

105.    It is a matter of public concern that James A. Baker III, William Pelham Barr, and *Six

Known Members* unlawfully detained a citizen of the United States in Illinois under

constant unlawful surveillance through satellite monitoring, phone "hacking," computer

"hacking," and bribing U.S. citizens to report the words and actions of a fellow U.S.

citizen to the DOJ for more than twenty-three (23) years in exchange for employment

("state jobs") and tuition waivers.

106.    The *Six Known Members* acting through officials and employees of the State of

Illinois to engage in a retaliation campaign against Mr. Grant for filing an ethics

complaint and a civil rights complaint with the State of Illinois in 2012:

    a.    is a violation of Mr. Grant's U.S. Const. Amend. I right to Free Speech;

    b.    is a violation of Mr. Grant's  U.S. Const. Amend. VIII right to be free from "cruel

        and unusual punishment;" and

    c.    is actionable under 42 U.S.C. 1985(3) and 42 U.S.C. 1983 as the *Six Known

        Members* entered into a "joint action" with officials and employees of the State of

        Illinois to deprive Mr. Grant of his U.S. Constitutional rights. *See Hampton v.

        Hanrahan*, 600 F. 2d 600 (1979).

107.    The *Six Known Members* attempting to assassinate Mr. Grant between 2017 and 2018 in response to Mr. Grant exercising his right to Free Speech and to "petition the government for a redress of grievances" is a violation of Mr. Grant's U.S. Const. Amend. I rights.

## SLAVERY and INVOLUNTARY SERVITUDE (COUNT XV)

108.    James A. Baker III, William Pelham Barr, and *Six Known Members* unlawfully detained Mr. Grant in Illinois for more than twenty (24) years under threat of military force (violence) to be: (a) the DoD's Witness to the 9/11 Terrorist Attacks; (b) beaten; and (c) endure psychological warfare in violation of Mr. Grant's U.S. Const. Amend. XIII right to not be a slave.

109.    James A. Baker III, William Pelham Barr, and *Six Known Members* kept Mr. Grant in involuntary servitude for thirty (30) years in violation of Mr. Grant's U.S. Const. Amend. XIII right. James A. Baker III, William Pelham Barr, and *Six Known Members* set the conditions for Mr. Grant to earn his freedom:

   a.   be beaten;

   b.   endure psychological warfare;

   c.   be the DoD's Witness to the 9/11 Terrorist Attacks;

   d.   graduate high school;

   e.   graduate college;

   f.   accept employment with the State of Illinois;

   g.   be retaliated against by officials and employees of the State of Illinois;

   h.   file suit against the DOJ and State of Illinois in 2016.

110.     James A. Baker III, William Pelham Barr, and *Six Known Members* had no intention

of releasing Mr. Grant from bondage/slavery/involuntary servitude.

**18 U.S.C. 1595 - PEONAGE, SLAVERY, and HUMAN TRAFFICKING**

**D.C. CODE 22-1840 - HUMAN TRAFFICKING - CIVIL ACTION**

(Count XVI)

111.     Mr. Grant has a cause of action of action against James A. Baker III, William Pelham

Barr, and *Six Known Members* under 18 U.S.C. 1595 - Peonage, Slavery, and Human

Trafficking and D.C. Code 22-1840 - Human Trafficking - Civil Action.

**18 U.S.C. 1589 - Forced Labor**

**D.C. Code 22-1832(a) - Forced Labor**

112.     Mr. Grant was unlawfully detained in the basement of the Pentagon for two and a half

(2.5) years; unlawfully detained in Illinois for twenty-eight (28) years under threat of

military force (violence); forced to work for the State of Illinois for four (4) years; be

retaliated against by officials and employees of the State of Illinois for more than three

(3) years; wrongfully not added to the payroll of the Illinois Governor's Office in 2014;

wrongfully denied Federal unemployment benefits; and BLACKLISTED in 2015 to give

Mr. Grant legal causes of action to appear in Federal Court to seek redress for James A.

Baker III, William Pelham Barr, and *Six Known Members* deprivations of Mr. Grant's

U.S. Constitutional rights. *See* 18 U.S.C. 1589 - Forced Labor. *See* D.C. Code 22-1832(a)

- Forced Labor.

**18 U.S.C. 1590 - Trafficking with Respect to Peonage, Slavery, Involuntary**

**Servitude, or Forced Labor**

**D.C. CODE 22-1833(1) -Trafficking in Labor or Commercial Sex Acts**

113.     James A. Baker III, Caspar Weinberger, Frank Carlucci, and William Howard Taft IV

trafficked Mr. Grant from Air Force Systems Command in Maryland to the basement of

the Pentagon in 1990 to be unlawfully detained for two and a half (2.5) years. *See* 18

U.S.C. 1590 - Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or

Forced Labor. *See* D.C. Code 22-1833(1) - Trafficking in Labor or Commercial Sex Acts.

114.     James A. Baker III, William Pelham Barr, and *Six Known Members* trafficked Mr.

Grant from the basement of the Pentagon in Virginia to Springfield, Illinois in 1992 to be:

(1) beaten; (2) endure psychological warfare; (3) the DoD's Witness to the 9/11 Terrorist

Attacks; (4) hired by the State of Illinois; (6) wrongfully denied Federal unemployment

benefits; and (7) file a lawsuit against the U.S. Federal government and the State of

Illinois to obtain his freedom. *See* 18 U.S.C. 1590 - Trafficking with Respect to Peonage,

Slavery, Involuntary Servitude, or Forced Labor. *See* D.C. Code 22-1833(1) - Trafficking

in Labor or Commercial Sex Acts.

### 18 U.S.C. 1581 - Peonage; Obstructing Enforcement

115.     James A. Baker III, William Pelham Barr, and *Six Known Members* entered into a

"joint action" to unlawfully detain Mr. Grant in Illinois beginning in 1992; and entered

into an agreement with the following to not aid Mr. Grant escaping Illinois (a) FBI -

ILCD; (b) U.S. Attorney's Office - ILCD; (c) ILCD Judges; (d) Seventh Judicial Circuit

Judges; (e) Springfield Police Department; (f) Sangamon County Sheriff's Office; and (g)

Sangamon County State's Attorney's Office. *See* 18 U.S.C. 1581 - Peonage; Obstructing

Enforcement.

### 18 U.S.C. 1593(a) - Benefitting Financially From Peonage, Slavery and Trafficking in Persons

**D.C. CODE 22-1836 -Benefitting Financially from Human Trafficking**

116.    James A. Baker III, William Pelham Barr, and *Six Known Members* unlawfully

detained Mr. Grant in Virginia and Illinois for nearly thirty (30) years as part of a

government enterprise. *See* 18 U.S.C. 1593(a) - Benefitting Financially From Peonage,

Slavery and Trafficking in Persons. *See* D.C. Code 22-1836 - Benefitting Financially

from Human Trafficking.

117.    OPERATION: HOMETOWN GLORY is a DoD domestic black operation run under

the banner of the DOJ.

**18 U.S.C. 1595 - Peonage, Slavery, and Human Trafficking**

**D.C. CODE 22-1840 - Human Trafficking - Civil Action**

118.    Mr. Grant has been the victim of James A. Baker III, William Pelham Barr, and *Six*

*Known Members* three (3) decade conspiracy against Mr. Grant. *See* 18 U.S.C. 1595 -

Peonage, Slavery, and Human Trafficking (Civil Action) *See* D.C. Code 22-1840 - Civil

Action.

**SEXUAL ASSAULT**

119.    Alan D. Brents and Larissa M. Young drugged and sexually assaulted Mr. Grant in

2003 at the direction of Gregory K. Harris.

120.    Thomas W. Coats and Justin Cajindos drugged and sexually assaulted Mr. Grant in

June of 2014 at the direction of Gregory K. Harris.

121.    Thomas W. Coats and Justin Cajindos drugged and sexually assaulted Mr. Grant in

June of 2014 at the direction of Gregory K. Harris to "interrogate" Mr. Grant while in a

"drug induced sleep."

122.     Thomas W. Coats and Justin Cajindos were employees of the State of Illinois in 2014

when they entered into an agreement with Ryan Croke and Gregory K. Harris to report

the words and actions of Mr. Grant to Gregory K. Harris, and to conspire against Mr.

Grant at the direction of Gregory K. Harris.

**CONSPIRACY**

123.   Mr. Grant has a cause of action against James A. Baker III, William Pelham Barr, *Six*

*Known Members*, Gregory K. Harris, Patrick J. Quinn, Ryan Croke, ISP Trooper Tyler

Price, and Thomas W. Coats for conspiracy. The elements of conspiracy are:

a.   an agreement;

b.   a purpose to deprive any person or class of persons of equal protection of the

laws, or of equal privileges and immunities under the law;

c.   an act by one of the conspirators in furtherance of the conspiracy; and

d.   a person injury, injury to property, or a deprivation of any right or privilege of a

citizen of the United States. *See Adock v. Brakegate, Ltd.* 645 N.E. 2d 888 (1994).

*See Griffin v. Breckenridge*, 403 U.S. 88 102-103 (1971).

124.    James A. Baker III, Caspar Weinberger, and Frank Carlucci siphoned two billon

dollars ($2,000,000,000.00) from the Strategic Defense Initiative beginning in the 1980's

to create Mr. Grant at Air Force Systems Command in 1990.

125.    James A. Baker III, Caspar Weinberger, Frank Carlucci recruited William Howard

Taft IV to further acquire DoD resources to conspire against Mr. Grant.

126.    William Howard Taft IV arranged the trafficking of Mr. Grant from Air Force

Systems Command in Maryland to the basement of the Pentagon in 1990.

127.   William Howard Taft IV recruited Michael Patrick Chamberlain Carns, James N. Mattis, Joseph F. Dunford Jr., John F. Kelly, and Mark T. Esper to unlawfully detain Mr. Grant in the basement of the Pentagon for two and a half years beginning in July of 1990.

128.   James A. Baker III, Caspar Weinberger, Frank Carlucci, William Howard Taft IV, and Michael Patrick Chamberlain Carns entered into an agreement to use Joint Special Operations Command (JSOC) to engineer Mr. Grant's life (deprive Mr. Grant of his U.S. Const. Rights in a wanton and reckless manner) to give Mr. Grant to appear in Federal court.

129.   James A. Baker III, Caspar Weinberger, Frank Carlucci, and William Howard Taft IV recruited William Pelham Barr after August 1990 to obtain DOJ resources to be used in the conspiracy against Mr. Grant.

130.   James A. Baker III, Caspar Weinberger, Frank Carlucci, William Howard Taft IV, and William Pelham Barr recruited officials and employees of the State of Illinois in 1992 to enter into an agreement to conspire against Mr. Grant at the direction of James A. Baker III, William Pelham Barr, William Howard Taft IV, and *Six Known Members*.

131.   James A. Baker III, William Pelham Barr, Caspar Weinberger, Frank Carlucci, and *Six Known Members* entered into an agreement with Illinois Governor James 'Jim' Edgar to unlawfully detain Mr. Grant in Illinois beginning in 1992, and for the State of Illinois to provide "state jobs" and tuition waivers to individuals who reported the words and actions of Mr. Grant to Gregory K. Harris, and conspired against Mr. Grant at the direction of Gregory K. Harris.

132.   William Pelham Barr, as Attorney General of the United States, placed Gregory K. Harris on the payroll of the ILCD U.S. Attorney's Office to unlawfully surveil and

41

conspire against Mr. Grant at the direction of James A. Baker III, William Pelham Barr, William Howard Taft IV, and *Six Known Members*.

133.    For twenty-four (24) years, Gregory K. Harris unlawfully surveilled and conspired against Mr. Grant at the direction of James A. Baker III, William Pelham Barr, and *Six Known Members* by distributing "state jobs" and tuition waivers to individuals who reported the words and actions of Mr. Grant to Gregory K. Harris; and to those who conspired against Mr. Grant at the direction of Gregory K. Harris.

134.    For twenty-four (24) years, Mr. Grant's family, peers, teachers, co-workers, and supervisors reported the words and actions of Mr. Grant to Gregory K. Harris in exchange for "state jobs" and tuition waivers violating Mr. Grant's right to privacy, and to be free from "unreasonable searches and seizures."

135.    Deirdre 'D.K.' Hirner and Ann L. Schneider entered into an agreement with James A. Baker III, William Pelham Barr, William Howard Taft IV, and *Six Known Members* in 1992 to hire Mr. Grant in the future.

136.    D.K. Hirner (Chief of Staff to the Illinois Lieutenant Governor) hired Mr. Grant in 2011 as a Policy Analyst with the Office of the Illinois Lieutenant Governor. D.K. Hirner entered into an agreement with Gregory K. Harris in 2010 to report the words and actions of Mr. Grant to Gregory K. Harris, and to conspire against Mr. Grant at the direction of Gregory K. Harris.

137.    Ann L. Schneider (Secretary of the IDOT) hired Mr. Grant in 2012 as a Staff Assistant with the IDOT.

138.    After Mr. Grant filed an ethics complaint and a civil rights complaint with the State of

Illinois in 2012, Mr. Grant was retaliated against by officials and employees of the State

of Illinois at the direction (and coordination) of Gregory K. Harris:

   a.   Mr. Grant's work products were sabotaged in 2012;

   b.   Mr. Grant was slandered between 2012 and 2015;

   c.   Mr. Grant endured a hostile work environment from 2012 until 2014;

   d.   Mr. Grant was geographically reassigned in 2012 and 2013;

   e.   Mr. Grant was given work assignments below his pay grade between 2012 and

        2014;

   f.   Mr. Grant had a promotion rescinded in 2012;

   g.   Mr. Grant was given his first ever negative performance evaluation in 2012;

   h.   The Office of the Illinois Governor failed to add Mr. Grant to payroll when the

        Office of the Illinois Governor offered Mr. Grant a job in Springfield, Illinois in

        2014 when Mr. Grant was being laid-off by IDOT in 2014 under the guise of a

        material reorganization;

   i.   Ryan Croke (Patrick J. Quinn's Chief of Staff) and Cheryl Byers (Patrick J.

        Quinn's Campaign Manager) colluded with officials and employees of the Illinois

        Department of Employment Security to wrongfully deny Mr. Grant Federal

        unemployment benefits in 2015; and        EXHIBIT #5

   j.   Mr. Grant found himself BLACKLISTED in 2015.

### JOINT TORTFEASORS

139.    James A. Baker III, William Pelham Barr, and *Six Known Members* are joint

tort-feasors, and as joint tort-feasors are:

a. liable for the actions of Gregory K. Harris;

b. liable for the actions of officials and employees of the State of Illinois directed by Gregory K. Harris in furtherance of the conspiracy masterminded by James A. Baker III.

See *Woods v. Cole*, 693 N.E. 2d 333 (Ill. 1998). See *Pinkerton v. United States*, 328 U.S. 640 (1946). See *Norskog v. Pfiel*, 197 Ill. 2d. 60 (2001).

## RES JUDICATA

140. Res Judicata is not applicable:

a. Mr. Grant's lawsuit has not been decided on the merits:

1. The ILCD Clerk of Court failed to enter default (Fed. R. Civ. P. 55(a) in 16-cv-3245, 17-cv-3261, and 19-cv-3001 after being intimidated by the *Six Known Members*, which is fraud; See *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

2. ILCD Judges: Colin S. Bruce (16-cv-3245 and 17-cv-3261) and Joe Billy McDade (19-cv-3001) dismissed Mr. Grant's lawsuit after being intimidated by *Six Known Members*, which is fraud; See *Hazel-Atlas Glass Co. v. Hartford Empire Co .*, 322 U.S. 238 (1944).

3. Seventh Judicial Circuit of Illinois Judge Brian T. Otwell (17-MR-754) dismissed Mr. Grant's lawsuit at the request of Gregory K. Harris in a "joint action;" See *Hazel-Atlas Glass Co. v. Hartford Empire Co*

4. Seventh Judicial Circuit of Illinois Judge John M. Madonia (18-L-202) dismissed Mr. Grant's lawsuit after being intimidated by *Six Known*

Members in a "joint action;" *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

5. Eastern District of Virginia Judges: Claude M. HIlton (19-cv-1228) and Rossie D. Alston Jr. (20-cv-173) dismissed Mr. Grant's lawsuit after being intimidated by *Six Known Members*; *See Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238 (1944).

b. Second Suit Involving Their Parties or Privies:

1. Mr. Grant brought suit against the DOJ and State of Illinois in 16-cv-3245 and 17-cv-3261 in the ILCD;

2. Mr. Grant brought suit against the DoD in 19-cv-3001;

3. Mr. Grant brought suit against the Central Intelligence Agency, Special Collection Service, and State of Illinois in 19-cv-1228 and 20-cv-173 in the Eastern District of Virginia;

4. Mr. Grant has not previously brought a claim under 18 U.S.C. 1595 - Peonage, Slavery, and Human Trafficking;

5. Mr. Grant has not previously filed state law claims against individuals, except for Richard Abel Kabaker;

*See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944).

c. Eastern District of Virginia Judge Rossie D. Alston Jr. (20-cv-173) dismissed Mr. Grant's lawsuit improperly invoking res judicata;          EXHIBIT #8
                                                                    EXHIBIT #9

d. Eastern District of Virginia Judges: Claude M. Hilton (19-cv-1228) and Rossie D. Alston Jr. (20-cv173) dismissed Mr. Grant's lawsuit at the direction of *Six Known Members*;          EXHIBIT #8
                                                                    EXHIBIT #9

45

e.   Gregory K. Harris directed Seventh Judicial Circuit of Illinois Judge Brian T. Otwell (17-MR-754) dismissed Mr. Grant's lawsuit at the direction of Gregory K. Harris; and

f.   *Six Known Members* directed Seventh Judicial Circuit of Illinois Judge John M. Madonia (18-L-202) to dismiss Mr. Grant's lawsuit.

**TOOLEY v. NAPOLITANO, 586 F. 3d 1006, 1009-10 (D.C. Cir. 2009)**

141.   James A. Baker III, William Pelham Barr, and *Six Known Members* had no legal cause to unlawfully detain Mr. Grant for nearly thirty (30) years, and unlawfully surveil Mr. Grant for thirty (30) years.

142.   The DOJ has previously cited *Tooley v. Napolitano*, 586 F. 3d 1006, 1009-10 (D.C. Cir. 2009), the court concluded: "it is altogether possible" that *Tooley* was the subject of "entirely lawful wiretaps placed by state or local law enforcement agencies" and that *Tooley* could not show that it was a federal agent responsible for any of his alleged physical surveillance." *See Tooley v. Napolitano*, 586 F. 3d 1006 (D.C. Cir. 2009).

143.   James A. Baker III, William Pelham Barr, and *Six Known Members* began surveilling Mr. Grant while Mr. Grant was detained in the basement of the Pentagon in 1990; the unlawful surveillance of Mr. Grant continued and expanded when James A. Baker III, William Pelham Barr, and *Six Known Members* trafficked Mr. Grant to Springfield, Illinois in 1992 to be: (a) beaten; (b) endure psychological warfare; (c) the DoD's Witness to the 9/11 Terrorist Attacks. *See Mitchell v. Forsyth*, 472 U.S. 511 (1985).

144.   Mr. Grant is "the real party in interest." Mr. Grant suffered physical damages, monetary damages, and deprivation of Mr. Grant's U.S. Constitutional rights by the

actions of James A. Baker III, William Pelham Barr, and *Six Known Members. See Best v. Kelly*, 39 F. 3d 328 (D.C. Cir. 1994).

145.    The City of Springfield (Illinois), Illinois Department of Transportation, Office of the Illinois Governor, and State of Illinois have a history of engaging in conspiracies:

   a.   Whitlow v. Martin, 719 F. Supp. 2d 983 (C.D. 2010);

   b.   Tamayo v. Blagojevich, 526 F. 3d 1074, 1086 (7th Cir. 2008);

   c.   Renatta Frazier v. Harris (City of Springfield);

   d.   Tammy Duckworth, Illinois Department of Veterans Affairs

146.    The Federal Tort Claims Act is not applicable. James A. Baker III, William Pelham Barr, and *Six Known Members* were acting outside the scope of their employment as officers with the United States Federal government violating Mr. Grant's U.S. Constitutional rights with wanton and reckless regard.

147.    Mr. Grant has exhausted all administrative remedies with the State of Illinois and
                                          EXHIBIT #11
United States Federal government.      EXHIBIT #12

148.    Mr. Grant seeks $99,000,000,000,000.00

149.    The Federal Tort Claims Act is only applicable if the Attorney General of the United States certifies William Pelham Barr was acting within the scope of his employment.

150.    Mr. Grant has exhausted all administrative remedies with the State of Illinois and United States Federal government.

   ERRORS IN ILCD JUDGE COLIN S. BRUCE'S RULING (16-CV-3245)

149.    ILCD Judge Colin S. Bruce (16-cv-3245) dismissed Mr. Grant's lawsuit incorrectly claiming the State of Illinois had sovereign immunity under the State Lawsuit Immunity Act (745 ILCS 5/1 et seq.):

a. the State Lawsuit Immunity Act (745 ILCS 5/1 et seq.) allows the State of Illinois to be made a defendant in a lawsuit under the State Officials and Employee Ethics Act (5 ILCS 430). The Whistleblower Protection Act (5 ILCS 430 15-25) is a part of the State Officials and Employees Ethics Act (5 ILCS 430);

b. the State of Illinois waived sovereign immunity by consenting the 16-cv-3245 being removed from the Seventh Judicial Circuit of Illinois to the ILCD;

   *See Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002).

150. ILCD Judge Colin S. Bruce (16-cv-3245) dismissed Mr. Grant's lawsuit incorrectly claiming the DOJ was not properly served:

a. the Sangamon County Sheriff's Office served summons and complaint on the ILCD U.S. Attorney's Office;

b. the Summons and Complaint were served on the ILCD U.S. Attorney's Office using United States Postal Certified mail; and

c. the Summons and Complaint were served on the Attorney General of the United States using United States Postal certified mail.

151. Six Known Members of the U.S. Department of Defense
Caspar Weinberger, Secretary of the U. Department of Defense
Frank Carlucci, Secretary of the U.S. Department of Defense
William Howard Taft IV, Deputy Secretary of the U.S. Department of Defense
Michael Patrick Chamberlain Carns, Joint Staff Director
James N. Mattis, Secretary of the U.S. Department of Defense
Joseph F. Dunford Jr., Chairman of the Joint Chiefs of Staff
John F. Kelly
Mark T. Esper, Secretary of the U.S. Department of Defense

152. Mr. Grant seeks $99,000,000,000,000.00

153. MR. GRANT'S WITNESSES

Michael J. Madigan

Jesse White

Emil Jones

Barack H. Obama

ILLINOIS STATE POLICE

DATE: SEPTEMBER 23, 2021                          s/WILLIAM LEE GRANT II

William Lee Grant II
901 Wythe Road
Springfield, Illinois 62702
(217)726-5269

154. Improper venue is not an argument available to William Pelham Barr and the
United States as Mr. Grant's lawsuits in the Central District of Illinois,
Northern District of Illinois, and District of Columbia have been dismissed as a result of
James A. Baker III, William Pelham Barr, and Six Known Members of the U.S. Department
of Defense intimidating Judges to dismiss Mr. Grant's lawsuit.

See Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

s/WILLIAM LEE GRANT II

DATE: SEPTEMBER 23, 2021                  William Lee Grant II
901 Wythe Road
Springfield, IL 62702
(217)726-5269

49



EXHIBIT IN SUPPORT OF COMPLAINT                    EXHIBIT #1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

WILLIAM LEE GRANT II,                )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )
                                     )   Civil Action No. 1:20-cv-00173 (RDA-IDD)
CENTRAL INTELLIGENCE AGENCY,         )
*et al.*,                            )
                                     )
                                     )
        Defendants.                  )

### ORDER

It appears from the record that Defendant State of Illinois ("State of Illinois") is in default and that Plaintiff William Lee Grant has obtained an entry of default against the State of Illinois from the Clerk pursuant to Federal Rule of Civil Procedure 55(a). The Clerk has entered default against the State of Illinois. Dkt. 19.

Accordingly, it is hereby ORDERED that Plaintiff is directed to file a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b) and an accompanying memorandum setting forth the factual and legal support for findings that (a) this Court has subject matter and personal jurisdiction, including how the defaulting Defendant was served and why that service was proper; (b) the Complaint alleges facts establishing all the necessary elements of one or more claims on which relief can be granted; and (c) Plaintiff can receive the damages and relief sought, with specific references to affidavits, declarations, or other evidence supporting such relief.

It is further ORDERED that Plaintiff file a Notice setting a hearing on the motion for default judgment for 10:00 a.m. on Friday, September 18, 2020, before the Magistrate Judge to whom this action is referred. Plaintiff is also directed to mail copies of the notice, motion, and

memorandum to the defaulting Defendant at the Defendant's last known address, certifying the same to the Court.

The Clerk is directed to forward a copy of this Order to counsel of record who is directed to forward this Order to the Defendant.

It is SO ORDERED.

Alexandria, Virginia
August 24, 2020

/s/

Rossie D. Alston, Jr.
United States District Judge

2

Case 1:21-cv-03167-TJK   Document 1-1   Filed 12/03/21   Page 59 of 95

Case 1:21-cv-3123150-N8046-DBbuHEHt 7-2-1-FiledPage/237/2016Page 37 of 61
Case 1:20-cv-00173-RDA-IDD   Document 1   Filed 02/19/20   Page 13 of 16 PageID# 13



EXHIBIT IN SUPPORT OF COMPLAINT

V

EXHIBIT #2



**STATE OF ILLINOIS**
**OFFICE OF THE GOVERNOR**
SPRINGFIELD, ILLINOIS 62706

Pat Quinn
GOVERNOR

August 2, 2010

Re: William Grant

To Whom It May Concern,

It is my pleasure to provide this letter of recommendation for William Grant. I am currently William's direct supervisor in Governor Pat Quinn's Office of Citizen Action. He has been an intern here since June 2010.

As a Constituent Affairs intern, William was responsible for managing constituent phone calls, opening and responding to letters, occasionally drafting public documents such as proclamations and newsletter articles and working on projects related to constituent outreach. He had the opportunity to become very familiar with state government and developed a solid understanding of the functions of many of the State agencies under the purview of the Governor.

Throughout the summer, he also managed the valedictorian celebration at the 2010 State Fair, which is an annual event attended by high school valedictorians throughout the state, as well as the Governor. He managed this project on his own and was solely responsible for the logistics of this major event as well as communicating with all participants.

William has been a very valuable asset not only to the Governor's Office of Citizen Action, but was helpful in other units within the Governor's Office as well. He is a team player and I believe he will be a great addition to your office. I do not hesitate to offer my recommendation.

Sincerely,

s/Donna Dalton

Donna Dalton
Director of Constituent Affairs

AMENDED COMPLAINT                    OPERATION: HOMETOWN GLORY
16-CV-3245

GRANT v BARR

Case 1:21-cv-03167-TJK   Document 1-1   Filed 12/03/21   Page 60 of 95

Case 1:21-cv-312B59-N8036-DOOUUTEHt 7-1-1Filed 06/23/21 6Page 39 of 61
Case 1:20-cv-00173-RDA-IDD   Document 1   Filed 02/19/20   Page 15 of 16 PageID# 15



EXHIBIT IN SUPPORT OF COMPLAINT

V





EXHIBIT #4

### STATE OF ILLINOIS
## OFFICE OF THE GOVERNOR
#### SPRINGFIELD, ILLINOIS 62706

**Pat Quinn**
**GOVERNOR**

December 21, 2014

To Whom It May Concern:

I am pleased to recommend Will Grant for employment. I have always known Will to be a skilled and dedicated public servant for the State of Illinois. His innate interpersonal skills and work ethic have earned him the respect and confidence of his colleagues.

Will is highly organized, mission oriented, and hard working. Will has proven himself to be an essential team member, and I am confident he will continue to be just that with his future employers.

I am certain that he will be an asset and make great contributions to your organization. If you have any additional questions regarding Will's experience or abilities, please do not hesitate to contact me.

Sincerely,

s/Ryan Croke

Ryan Croke
Chief of Staff
(847) 271-7926

97

AMENDED COMPLAINT
16-CV-3245

OPERATION: HOMETOWN GLORY

GRANT v BARR

EXHIBIT IN SUPPORT OF COMPLAINT
GRANT v BARR
EXHIBIT #10

| a Employee's social security number | | |
|---|---|---|
| 5460 | OMB No. 1545-0008 | Safe, accurate, FAST!Use · IRS e~file · Visit the IRS website at www.irs.gov/efile |

| b Employer's identification number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 37-600 2057 | 23,376.57 | 2,963.60 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| STATE OF ILLINOIS 886-0330001 COMPTROLLER WITHHOLDING AGENT 325 WEST ADAMS STREET SPRINGFIELD, ILLINOIS 62704-1871 | 24,897.22 | 1,045.67 |
| | 5 Medicare wages and tips | 6 Medicare tax withheld |
| | 24,897.22 | 360.98 |
| | 7 Social security tips | 8 Allocated tips |

| d Control number | 9 | 10 Dependent care benefits |
|---|---|---|
| 107,794 | | |

| e Employee's first name and initial  Last name | 11 Nonqualified plans | 12a See instructions for box 12 |
|---|---|---|
| WILLIAM L  GRANT | | |
| 02 002 | 13 Statutory employee / Retirement plan [X] / Third-party sick pay | 12b  G  500.00 |
| | 14 Other Benefits included in Box 1 | 12c |
| | | 12d |

| f Employee's address and ZIP code | | |
|---|---|---|
| 901 WYTHE ROAD SPRINGFIELD IL 62702 | | |

| 15 State  Employer's state ID no. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|
| IL  37600205 | 23,376.57 | 1168.81 | | | |

Form W-2 Wage and Tax Statement 2011
Copy C for EMPLOYEE'S RECORDS (See Enclosed Notice)

Department of the Treasury-Internal Revenue Service

| a Employee's social security number | 5460 | OMB No. 1545-0008 | Safe, accurate, FAST! Use | IRS e-file | Visit the IRS website at www.irs.gov/efile |
|---|---|---|---|---|---|

| b Employer's identification number | 37-600 2057 | * SALARY * | 1 Wages, tips, other compensation | 36,311.55 | 2 Federal income tax withheld | 5,356.05 |
|---|---|---|---|---|---|---|

| c Employer's name, address, and ZIP code | 3 Social security wages | 38,570.17 | 4 Social security tax withheld | 1,619.93 |
|---|---|---|---|---|

STATE OF ILLINOIS 86-0330051
COMPTROLLER - WITHHOLDING AGENT
SPECIAL STREET
SPRINGFIELD, ILLINOIS 62704-1871

| 5 Medicare wages and tips | 38,570.17 | 6 Medicare tax withheld | 559.30 |
|---|---|---|---|

| d Control number | 64,510 | 23 240 | 7 Social security tips | | 8 Allocated tips | |
|---|---|---|---|---|---|---|

| e Employee's first name and initial   Last name | 9 | | 10 Dependent care benefits | |
|---|---|---|---|---|

WILLIAM L GRANT

| 11 Nonqualified plans | | 12a See instructions for box 12 | DD 5,691.68 |
|---|---|---|---|

| 13 Statutory employee [ ] Retirement plan [X] Third-party sick pay [ ] | 12b G 680.00 |
|---|---|

| 14 Other | 12c |
|---|---|

| | 12d |
|---|---|

| f Employee's address and ZIP code | | | | |
|---|---|---|---|---|

901 WYTHE RD
SPRINGFIELD IL 62702

| 15 State | Employer's state ID no. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| IL | 37600057 | 36,311.55 | 1815.56 | | | |

Form W-2 Wage and Tax Statement 2015
Copy C For EMPLOYEE'S RECORDS (See Enclosed Notice)

Department of the Treasury—Internal Revenue Service

**a** Employee's social security number  5460  OMB No. 1545-0008  Safe, accurate, FAST! Use  IRS e-file  Visit the IRS website at www.irs.gov/efile.

**b** Employer identification number
37-600 2057

**c** Employer's name, address, and ZIP code
STATE OF ILLINOIS 88-03600001
COMPTROLLER - DISBURSING AGENT
SPRINGFIELD, ILLINOIS 62704-1871

**d** Control number
71,314                23 240

**e** Employee's first name and initial   Last name
WILLIAM L            GRANT

**f** Employee's address and ZIP code
901 WYTHE RD
SPRINGFIELD IL 62702

SALARY *

| Box | Description | Amount |
|---|---|---|
| 1 | Wages, tips, other compensation | 41,108.91 |
| 2 | Federal income tax withheld | 5,745.86 |
| 3 | Social security wages | 45,231.88 |
| 4 | Social security tax withheld | 2,804.40 |
| 5 | Medicare wages and tips | 45,231.88 |
| 6 | Medicare tax withheld | 655.88 |
| 7 | Social security tips | |
| 8 | Allocated tips | |
| 9 | | |
| 10 | Dependent care benefits | |
| 11 | Nonqualified plans | |
| 12a | G | 2,225.00 |
| 12b | DD | 7,315.44 |
| 12c | | |
| 12d | | |
| 13 | Statutory employee / Retirement plan X / Third-party sick pay | |
| 14 | Other / Benefits included in Box 1 | |

| 15 State | Employer's state I.D. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| IL | 37-6002057 | 41,108.91 | 2055.42 | | | |

Form W-2 Wage and Tax Statement 2013
Copy C For EMPLOYEE'S RECORDS (See Enclosed Notice)

Department of the Treasury-Internal Revenue Service

| a Employee's social security number | | Safe, accurate, FASTI Use | OMB No. 1545-0008 | | Visit the IRS website at www.irs.gov/efile. |
|---|---|---|---|---|---|

| b Employer identification number (EIN) | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|
| 37-600 2057 | 37,268.99 | 5,230.14 |

| c Employer's name, address, and ZIP code | 3 Social security wages | 4 Social security tax withheld |
|---|---|---|
| STATE OF ILLINOIS 890-03300001 | 39,961.58 | 2,477.68 |
| COMPTROLLER - WITHHOLDING AGENT | 5 Medicare wages and tips | 6 Medicare tax withheld |
| SPRINGFIELD, ILLINOIS 62704-1871 | 39,961.58 | 579.41 |

| d Control number | 7 Social security tips | 8 Allocated tips |
|---|---|---|
| 23 240 | | |

| e Employee's first name and initial   Last name | 9 | 10 Dependent care benefits |
|---|---|---|
| WILLIAM L          GRANT | 11 Nonqualified plans | 12a See instructions for box 12 |
| 74,502 | | C |
| 901 WYTHE RD | 13 Statutory Retirement Third-party | G   1,000.00 |
| SPRINGFIELD IL 62702 | employee plan sick pay | 12b |
| | 14 Other | C   .09 |
| | | 12c |
| | | DD   6,845.70 |
| | | 12d |

| f Employee's address and ZIP code |
|---|

| 15 State  Employer's state I.D. no. | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|
| IL 37-6002057 | 37,268.99 | 1863.46 | | | |

Form W-2 Wage and Tax Statement 20-
Copy C For EMPLOYEE'S RECORDS (See Enclosed Notice)

Department of the Treasury-Internal Revenue Service

Case: 1:21-cv-03167 Document 1-1 Filed 12/03/21 Page 16 of 16 PageID#16



EXHIBIT IN SUPPORT OF COMPLAINT

EXHIBIT #5

Illinois Department of Employment Security
Appeals Division

Springfield, IL 62701
Phone: (800) 244-5631 · TTY (888) 205-3145
www.ides.illinois.gov

WILLIAM L. GRANT

SPRINGFIELD, IL 62702-3428

| | |
|---|---|
| Date Mailed | 03/10/2015 |
| Claimant ID | 2703013 |
| Docket Number | 1505989 |
| Appeal Filed Date | 02/03/2015 |
| Date of Hearing | 03/06/2015 |
| Type of Hearing | Telephone |
| Place of Hearing | Springfield |

## Administrative Law Judge's Decision

(Este es un documento importante. Si usted necesita un intérprete, póngase en contacto con el Centro de Servicio al Reclamante al (800) 244-5631)

**Claimant Appellant**
WILLIAM L. GRANT

SPRINGFIELD, IL 62702-3428

**Employer**
DEPT OF TRANSPORTATION DEPT OF TRANSPORTATION

SPRINGFIELD, IL 62764-0001

**Appearances/Issues/Employer Status:** The claimant and employer appeared and testified. Whether the claimant left work voluntarily without good cause attributable to the employer? See 820 ILCS 405/601A. The employer is a party to the appeal.

**Findings of Fact:** The claimant worked for the employer as a technical manager/staff assistant in the legal department. He was paid about $47,500 a year, began in 2012 and last worked on or about October 27, 2014. The claimant was advised in August of 2014 that the employer was going to lay him off at the end of September. The union filed a lawsuit and the layoff was postponed until the end of October of 2014. The claimant was then advised the layoff has been postponed indefinitely. The claimant was on a month to month lease. The landlord did not renew the lease for the month of November. The claimant returned to his hometown area in Springfield, stopped reporting in his Chicago employer work location and attempted to get a transfer through the Governor's office. The claimant reported to the Governor's office in constituent serves in November and turned in time sheets for November 6, 7, and 10, 2015. The claimant was not paid and there was subsequent contact with this employer regarding pay and his work status. The claimant was ultimately not paid by this employer given he was not working for this employer and was not on its payroll. The claimant submitted a resignation to the employer on November 21, 2014 effective November 5, 2014. The claimant did not submit any more time sheets to the Governor's office and on or about December 3, 2014 was advised a transfer was not approved there.

**Conclusion:** 820 ILCS 405/601A provides that an individual shall be ineligible for benefits for the weeks in which he has left work voluntarily without good cause attributable to the employing unit and, thereafter, until he has become reemployed and has had earnings equal to or in excess of his current weekly benefit amount in each of four calendar weeks.

The claimant quit his job in Chicago primarily due to issues with his living arrangements. There was also evidence he sought and believed he may have had another job. While the claimant may have had a good reason to quit, the leaving was not attributable to the employer as the claimant did not materially change the terms of the working agreement. There was not sufficient evidence to support a finding of an exemption. The claimant was not hired at the Governor's office and was not paid any wages. While he testified that he worked at the Governor's office for a month, the claimant only submitted approximately three days of time sheets for payment (none of which were honored). The claimant is disqualified for benefits under Section 601A of the Act.

**Decision:** The Local Office Determination is AFFIRMED. Pursuant to 820 ILCS 405/601A, the claimant is disqualified for benefits. The claimant is not eligible for benefits from 11/30/2014

JOHN SCHELLENBERG, Administrative Law Judge
Appeals - Springfield
Fax: (309) 671-3121

L11L                          Page 1 of 2                          APL011L

MR. GRANT QUALIFIED FOR FEDERAL BENEFITS
PURSUANT TO: 820 ILCS 405/601 (B)(2).

171

AMENDED COMPLAINT
16-CV-3245

OPERATION: HOMETOWN GLORY

GRANT v BARR

administration in power. Under a scheme hatched by ex-Gov. Rod Blagojevich's staffers and continued under Quinn, IDOT created hundreds of phony exempt jobs — then transferred or promoted many of those workers into non-exempt positions, safe from the political whims of subsequent governors.

What's wrong with all of that? Qualified candidates were passed over for jobs and promotions. Taxpayers didn't get the best available employees. Workers who earned their jobs on merit have to take up the slack for those patronage hacks.

Oh, and it's illegal. In 1990, the U.S. Supreme Court ruled that with few exceptions, decisions about hiring, firing, promoting or transferring state workers cannot be based on politics. To assemble that army of "staff assistants," IDOT officials violated the hiring rules that grew from that decision.

Brennan was assigned in 2005 to oversee hiring in Chicago, after a federal investigation proved City Hall had been violating an earlier decree banning patronage in city government. Under her supervision, the city overhauled its hiring process to guard against political meddling.

The cost to taxpayers: $22.8 million for settlements, legal fees and consultants.

In June, Shenkier declared that Brennan's work at City Hall was done.

But there's plenty of demand for her services elsewhere, and not just at IDOT. Michael Shakman, the Chicago attorney behind the landmark 1969 anti-patronage suit, has been agitating for a state hiring monitor since 2009, after the Sun-Times reported that Blagojevich aides were running an illegal hiring system under which hundreds of state pols tapped their friends for thousands of state jobs.



Shakman's request languished after Blagojevich was sent to prison, but the cheating didn't stop. A three-year investigation by the Office of the Executive Inspector General released in August showed that at IDOT, it got *even worse* under Quinn.

The report led to a lot of furious finger-pointing because there's a tight race for governor. Republican Bruce Rauner says Quinn's a phony reformer who stacked IDOT with cronies, just like his felonious predecessor. Quinn says he knew nothing about the staff assistant scam and shut it down immediately when he found out. It's all fixed now, the governor insists.

But Judge Shenkier decided IDOT needs a monitor. He tapped Brennan to figure out how the pols managed to hijack hiring at the agency, and to build a new system to wall them out.

We hope she'll start where the inspector general's investigation left off: At the top.

http://www.chicagotribune.com/news/opinion/editorials/ct-illinois-patronage-scandal-edit-...   4/15/2016

staff assistant position or who was aware IDOT was circumventing the court-mandated outan hiring process," according to the report.

Quinn aides who signed off on all those hires said they assumed IDOT was following the rules and didn't notice the ballooning number of exempt positions. But ex-Transportation Secretary Ann Schneider, who lost her job over the scandal, said the "vast majority" of those hired outside routine channels were chosen by the governor's staff.

Emails between Quinn aides and IDOT officials during 2011 support that claim: An attachment labeled "Lavin List" contains the names of job candidates apparently submitted to IDOT by Quinn's then-Chief of Staff Jack Lavin.

We don't think for a minute that IDOT is an island of hiring violations in a sea of compliance. That's why it's important to determine what went on in the governor's office — and whether other state agencies were engaged in similar abuses.

Brennan has her work cut out for her. And taxpayers, you'll get the bill.

**Join in the discussion on the Chicago Tribune Editorial Board's Facebook page or on Twitter by following @Trib_Ed_Board.**

Copyright © 2016, Chicago Tribune

**This article is related to:** Illinois Department of Transportation, Executive Branch, Rod Blagojevich, Opinion, Editorials

GRANT V CLINTON 20-CV-1115

SUPPORT OF OBJECTION TO MOTION TO DISMISS

**SJR**
The State Journal-Register

Print Page

By John O'Connor
The Associated Press

August 22, 2014 11:43AM

## IDOT broke hiring rules for years, report finds

The Illinois Department of Transportation circumvented rules devised to keep politics out of state jobs and improperly hired more than 250 people in the last decade, accelerating the practice under Democratic Gov. Pat Quinn, the state's top investigator decreed in a report released Friday.

Executive Inspector General Ricardo Meza reported that IDOT's use of "staff assistants" to skirt anti-patronage guidelines began in 2003 under former Gov. Rod Blagojevich, who's serving a federal prison term for political corruption. But it noted that the number of hires jumped from 52 in 2008 to 104 in 2011, the first two years after Quinn, now locked in a tight battle for re-election in November, took over for the ousted Blagojevich.



The Illinois Department of Transportation headquarters

The report said investigators found no evidence that Quinn or his staff members were aware of impropriety, but former IDOT Secretary Ann Schneider, who resigned in June as heat grew on the administration over the hiring issue, said recommendations for agency hires came from Quinn's office.

The "vast majority" of hires "were chosen from those recommended to me or my staff by the governor's office," Schneider said in her response to the report. "Neither I nor my staff were in a position to reject the recommended positions."

Spokesman Grant Klinzman acknowledged that Quinn's office suggests applicants for eligible jobs, but he said the governor expects them to be hired according to the rules.

"The governor's office's expectation and understanding is, has been, and always will be that any candidate who is ultimately hired is doing the work of the position that candidate is filling," Klinzman said.

The mammoth report, which followed a three-year investigation, laid out a Byzantine process by which relatives, political supporters and friends of officeholders were hired as staff assistants, a job that the agency declared it could fill without publicly posting it and offering interviews to any qualified candidate. In many instances, those employees were then transferred — again without an interview — into jobs covered by the hiring rules, making it more difficult to remove them.

The impropriety "undoubtedly denied countless qualified candidates the opportunity to lawfully obtain state employment," the report said.

IDOT officials said the interview process is laborious and time-consuming when employees need to be hired quickly. Meza dismissed that claim.

"There was clearly agency mismanagement at the highest levels regarding the responsibilities they had," Meza told reporters in Chicago.

He said he had not talked to federal prosecutors, but he has the authority to share his findings with them if there is an inquiry.

Quinn got ahead of the release of Friday's report, calling on acting Transportation Secretary Erica Borggren to briefly tell reporters in Chicago — without mentioning the forthcoming report — that IDOT had decided to lay off the 58 current staff assistants at the agency, create a review board to oversee hiring, and freeze indefinitely the creation of any new positions that can be filled without strings.

That wasn't sufficient for Quinn's challenger in the November election, Republican Bruce Rauner, who in a prepared statement said Illinois residents "pay a significant corruption tax," adding that the patronage revelations "are just one more reminder why we need term limits on career politicians like Pat Quinn."

A U.S. Supreme Court ruling bars political considerations in most state government hires but allows political loyalty to be considered for jobs involving confidential information, policymaking or public statements. Meza found the staff assistant job descriptions included such tasks but that the employees were mowing grass, answering phones, setting up training and completing monthly supply requisitions.

Print Page

GRANT V BARR

EXHIBIT

EXHIBIT IN SUPPORT OF COMPLAINT   EXHIBIT # 7





EXHIBIT #8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

WILLIAM LEE GRANT II
PLAINTIFF

FEDERAL QUESTION
28 USC 1331

v

CENTRAL INTELLIGENCE AGENCY
SPECIAL COLLECTION SERVICE,
+
STATE OF ILLINOIS
DEFENDANTS

WHAT ARE THE RAMIFIC-
ATIONS OF THE DOD KEEPING
MR. GRANT IN ILLINOIS
FOR NEARLY THIRTY (30)
YEARS UNDER THREAT OF
MILITARY FORCE?

## CIVIL LIBERTIES COMPLAINT

(1) DISTRICT COURT HAS JURISDICTION PURSUANT TO:
28 USC 1346(b)(1); 28 USC 1391(b)(1); 42 USC 1983;
42 USC 1985(3); AND 28 USC 1331.

(2) MR. GRANT HAS A CLAIM UNDER U.S. CONST. AMEND IV;
U.S. CONST. AMEND V; U.S. CONST. AMEND XIII;
U.S. CONST. AMEND XIV; 42 USC 1983; AND 42 USC 1985(3).

(3) THE STATE OF ILLINOIS WAIVED SOVEREIGN IMMUNITY
BY CONSENTING TO 16-CV-3245 AND 17-CV-3261
BEING REMOVED TO THE ILLINOIS CENTRAL DISTRICT
FROM THE SEVENTH CIRCUIT OF ILLINOIS.

(4) THE ILLINOIS ATTORNEY GENERAL AND U.S. DEPART-
MENT OF JUSTICE (DOJ) DEFAULTED AND FAILED TO
DENY MR. GRANT'S ALLEGATIONS IN 16-CV-3245 AND
17-CV-3261.

THE STATE OF ILLINOIS DEFAULTED IN 18-L-202 (ILLINOIS
SEVENTH CIRCUIT OF ILLINOIS) (7) AND FAILED TO DENY MR.

(5) THE ILLINOIS CENTRAL DISTRICT HAS NOT FOUND MR. GRANT'S ALLEGATIONS TO BE: 28 USC 1915(e)(2)(B)(i); 28 USC 1915(e)(2)(B)(ii), OR 28 USC 1915(e)(2)(B)(iii).

(6) ~~THIRTY-ONE (31)~~ FEDERAL DISTRICT COURTS HAVE NOT FOUND MR. GRANT'S ALLEGATIONS TO BE: 28 USC 1915(e)(2)(B)(i); 28 USC 1915(e)(2)(B)(ii), OR 28 USC 1915(e)(2)(B)(iii).

(7) THE COMMANDER-IN-CHIEF ~~━━━━~~ OF THE UNITED STATES ARMED FORCES (RONALD REAGAN) DIRECTED THE SECRETARY OF DEFENSE TO CREATE MR. GRANT TO PREDICT FUTURE NUCLEAR ATTACKS.

(8) THE FUNDS TO CREATE MR. GRANT CAME FROM THE STRATEGIC DEFENSE INITIATIVE (MISSILE DEFENSE AGENCY).

(9) THE OFFICE OF THE SECRETARY OF DEFENSE CREATED MR. GRANT, ~~AT AIR FORCE SYSTEMS COMMAND~~ IN 1990.

(10) THE OFFICE OF THE SECRETARY OF DEFENSE USED JOINT SPECIAL OPERATIONS COMMAND (JSOC) TO ENGINEER MR. GRANT'S LIFE TO GIVE CAUSE FOR ~~━━~~ MR. GRANT TO APPEAR IN FEDERAL COURT.

(11) THE OFFICE OF THE SECRETARY OF DEFENSE "DROPPED OFF" MR. GRANT IN SPRINGFIELD, ILLINOIS IN 1992 WITH DR. BILL GRANT AND ARMENTA JOHNSON TO BE: BEATEN; ENDURE PSYCHOLOGICAL WARFARE; AND THE U.S. DEPARTMENT OF DEFENSE'S WITNESS TO THE 9/11 TERRORIST ATTACKS.

(95) THE OFFICE OF THE SECRETARY OF DEFENSE HAS COMMAND AUTHORITY OF THE U.S. MILITARY'S CONTINENTAL FORCES THROUGH THE U.S. NORTHERN COMMAND ~~━━━━~~

(2)

12) GREGORY K. HARRIS LEFT THE PENTAGON IN THE EARLY 1990's TO ILLEGALLY SURVEIL MR. GRANT THROUGH THE ILLINOIS CENTRAL DISTRICT U.S. ATTORNEY'S OFFICE.

13) GREGORY K. HARRIS BRIBED MR. GRANT'S FAMILY, PEERS, TEACHERS, CO-WORKERS, AND SUPERVISORS TO REPORT THE WORDS AND ACTIONS OF MR. GRANT TO GREGORY K. HARRIS.

14) GREGORY K. HARRIS DIRECTED MR. GRANT'S OPTOMETRIST TO GIVE MR. GRANT AN INCORRECT LENSE PRESCRIPTION TO DIMINISH MR. GRANT'S VISION WHEN MR. GRANT WAS IN 5TH GRADE (1995).

15) GREGORY K. HARRIS DIRECTED MR. GRANT'S ███ ORTHODONTIST TO DRILL THE ENAMEL OFF MR. GRANT'S TEETH FROM ███ 1999 - 2000.

16) WHEN MR. GRANT TURNED SEVENTEEN (17), MR. GRANT WAS FORCED TO STAB DR. GRANT IN 2002, OR THE OFFICE OF THE SECRETARY OF DEFENSE WOULD SEND SOMEONE TO KILL DR. GRANT.

17) GREGORY K. HARRIS UNDERMINED MR. GRANT'S LEGAL DEFENSE FOR DOMESTIC BATTERY BY COLLUDING WITH MR. GRANT'S LAWYERS.

18) GREGORY K. HARRIS RECRUITED (THEN ILCD U.S. ATTORNEY) RODGER A. HEATON TO ILLEGALLY SURVEIL AND CONSPIRE AGAINST MR. GRANT. ████

19) GREGORY K. HARRIS AND ██████████ RODGER A. HEATON RECRUITED NIVEESHA HILL TO ILLEGALLY SURVEIL AND CONSPIRE AGAINST MR. GRANT.

20) THE U.S. DEPARTMENT OF DEFENSE "BUGGED/HACKED" MR. GRANT'S CELLULAR PHONE, TELEPHONE, COMPUTER, AND KEPT MR. GRANT UNDER SATELLITE SURVEILLANCE FOR NEARLY THIRTY (30) YEARS.

21) (7), OR THE U.S. DEPARTMENT OF DEFENSE WOULD HAVE
SENT SOMEONE TO RAPE MR. GRANT.

22) MR. GRANT HAD TO "ACT GAY" FROM THE END OF DECEMBER
OF 2008 ▆▆ UNTIL THE END OF 2016.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

23) IN 2009, THE U.S. DEPARTMENT OF DEFENSE (DoD),
GREGORY K. HARRIS, AND THE ILLINOIS STATE POLICE (ISP)
"SET-UP" MR. GRANT FOR A DRIVING UNDER THE INFLUENCE
(DUI) CHARGE TO "STRIP" MR. GRANT OF HIS ▆ DRIVER'S
LICENSE.

24) IN 2009, ISP TROOPER TYLER PRICE "STOPPED" MR. GRANT
FOR AN ALLEGED IMPROPER LANE CHANGE.

25) ISP TROOPER TYLER PRICE FAILED TO MIRANDIZE MR.
GRANT, AND FAILED TO OBTAIN A WARRANT TO DRAW MR. GRANT'S
BLOOD.

26) ISP TROOPER TYLER PRICE ISSUED MR. GRANT MULTIPLE
DUI TICKETS STEMMING FROM ONE TRAFFIC STOP.

27) THE SANGAMON COUNTY STATE'S ▆ ATTORNEY'S OFFICE FILED
MULTIPLE DUI CASES AGAINST MR. GRANT STEMMING
FROM ONE 2009 TRAFFIC STOP.

28) MR. GRANT WAS SOBER.

29) GREGORY K. HARRIS UNDERMINED MR. GRANT'S LEGAL
DEFENSE BY COLLUDING WITH MR. GRANT'S LAWYERS
(THE FIRMS: TIMONEY + PAGE AND SHARP + HARMON).

MR. GRANT WAS HIRED BY THE STATE OF ILLINOIS IN

(30) 2011 TO GIVE THE ILLINOIS ATTORNEY GENERAL CAUSE
TO APPEAR IN COURT.

(31) DEIRDRE 'D.K.' HIRNER MADE AN AGREEMENT
WITH THE DoD IN THE EARLY 1990's TO HIRE MR. GRANT
IN THE FUTURE.

(32) D.K. HIRNER (CHIEF OF STAFF) HIRED MR. GRANT IN
2011 AS A POLICY ANALYST IN THE OFFICE OF THE
ILLINOIS LIEUTENANT GOVERNOR.

(33) ANN L. SCHNEIDER MADE AN AGREEMENT WITH THE
DoD IN THE EARLY 1990's TO HIRE MR. GRANT IN THE
FUTURE.

(34) ANN L. SCHNEIDER (SECRETARY OF THE ILLINOIS
DEPARTMENT OF TRANSPORTATION) HIRED MR. GRANT IN
2012 AS A STAFF ASSISTANT WITH THE ILLINOIS
DEPARTMENT OF TRANSPORTATION (IDOT).

(35) MR. GRANT WAS RETALIATED AGAINST FOR FILING AN ETHICS
COMPLAINT AND ███ A CIVIL RIGHTS COMPLAINT WITH
THE STATE OF ILLINOIS IN 2012.

(36) MR. GRANT ENDURED A HOSTILE WORK ENVIRONMENT,
WORK PRODUCTS BEING SABOTAGED, WORK HOURS BEING
MODIFIED, GEOGRAPHIC REASSIGNMENT, BEING ASSIGNED
WORK TASKS BELOW MR. GRANT'S ███████ PAY GRADE, AND
A PROMOTION BEING RESCINDED.

(37) IN 2014, MR. GRANT TRANSFERRED FROM IDOT TO THE
ILLINOIS GOVERNOR'S OFFICE.

(38) IN DECEMBER OF 2014, THE ILLINOIS GOVERNOR'S OFFICE
FAILED TO ADD MR. GRANT TO PAYROLL.

39) IN 2015, MR. GRANT WAS WRONGFULLY DENIED FEDERAL UNEMPLOYMENT BENEFITS BY THE ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY.

40) IN 2015, MR. GRANT FOUND HIMSELF BLACKLISTED.

41) THE ACTIONS OF THE STATE OF ILLINOIS GAVE CAUSE FOR MR. GRANT TO APPEAR IN FEDERAL COURT.

42) THE ILLINOIS ATTORNEY GENERAL DEFAULTED AND FAILED TO DENY MR. GRANT'S ALLEGATIONS ■ IN 16-CV-3245 AND 17-CV-3261.

43) ALAN D. BRENTS AND LARISSA M. YOUNG SEXUALLY ASSAULTED MR. GRANT IN 2003 AT THE DIRECTION OF GREGORY K. HARRIS.

44) THOMAS W. COATS AND JUSTIN CAJINDOS SEXUALLY ASSAULTED MR. GRANT IN 2014 AT THE DIRECTION OF GREGORY K. HARRIS.

45) THE DOD STOLE NEARLY THIRTY (30) YEARS OF MR. GRANT'S LIFE TO STATE AS FOLLOWS:

46) DONALD RUMSFELD GAVE A "STAND DOWN" ORDER ON 9/11 WITH THE CONSENT OF BUSH AND CHENEY.

47) DICK CHENEY LOBBIED FOR THE INVASION OF IRAQ TO GENERATE PROFITS FOR HALLIBURTON.

48) DICK CHENEY MADE $100 MILLION FROM HIS HALLIBURTON STOCK DUE TO THE WAR IN IRAQ.

49) HILLARY RODHAM CLINTON KILLED VINCE FOSTER TO PREVENT VINCE FOSTER FROM TESTIFYING AT THE WHITEWATER HEARINGS.

50) HILLARY RODHAM CLINTON LOBBIED FOR THE 1994 CRIME BILL IN EXCHANGE FOR FUTURE CAMPAIGN CONTRIBUTIONS FROM THE PRIVATE PRISON INDUSTRY.

51) HILLARY RODHAM CLINTON RECEIVED THE CAMPAIGN CONTRIBUTIONS DURING THE 2016 PRESIDENTIAL GENERAL ELECTION.

52) HILLARY RODHAM CLINTON SENT AMBASSADOR J. CHRISTOPHER STEVENS TO BENGHAZI, LIBYA AS A SUICIDE MISSION TO PREVENT THE AMBASSADOR FROM RELEASING A REPORT ADVOCATING THE DIVERSION OF FUNDS FROM IRAN TO LIBYA.

53) BILL CLINTON FIRED FEDERAL BUREAU OF INVESTIGATION DIRECTOR WILLIAM S. SESSIONS TO CONCEAL THE MURDER OF WHITE HOUSE COUNSEL VINCE FOSTER.

54) BILL CLINTON IS A SERIAL RAPIST.

55) BRUCE RAUNER BRIBED RAHM EMANUEL TO HIDE NATIONAL SECURITY REPORTS WHILE RAHM EMANUEL WORKED IN THE CLINTON WHITE HOUSE.

56) BRUCE RAUNER ASSISTED RAHM EMANUEL IN MAKING $14 MILLION IN THREE YEARS UPON LEAVING THE CLINTON WHITE HOUSE. BRUCE RAUNER WENT ON TO MAKE HUNDREDS OF MILLIONS OF DOLLARS THROUGH DoD INFORMATION TECHNOLOGY.

57) PHILIP MOUNTBATTEN "ORDERED" THE ASSASSINATION OF DIANA, PRINCESS OF WALES. THE BRITS NEED LOOK AT MI5.

58) THE HOUSE SAXE-COBURG & GOTHA STANDS UNITED.

59) THE HOUSE OF SAUD WAS COMPLICIT IN THE 9/11 TERRORIST ATTACKS.

60) THE CIA ORCHESTRATED THE ARAB SPRING.

61) JAMES R. THOMPSON FAILED TO PROSECUTE RICHARD J. DALEY FOR PUBLIC CORRUPTION IN EXCHANGE FOR RICHARD J. DALEY SUPPRESSING THE DEMOCRATIC VOTE TO ALLOW THOMPSON TO BECOME GOVERNOR OF ILLINOIS AS A REPUBLICAN.

62) RICHARD M. DALEY KILLED CHICAGO MAYOR HAROLD LEE WASHINGTON AND BERNARD EPTON.

63) JAMES R. THOMPSON ASSISTED RICHARD M. DALEY CONCEAL THE MURDER OF HAROLD LEE WASHINGTON AND BERNARD EPTON.

64) RICHARD M. DALEY'S SALE OF CHICAGO'S PARKING METERS IS FRAUD.

(65) ANITA ALVAREZ, COOK COUNTY (ILLINOIS) STATE's ATTORNEY ▓▓▓▓ ENTERED INTO A CONSPIRACY TO ALLOW CHICAGO COPS TO SHOOT BLACK PEOPLE FOR SPORT WITHOUT FEAR OF CRIMINAL PROSECUTION.

(66) O.J. SIMPSON KILLED NICOLE BROWN-SIMPSON AND RON GOLDMAN.

(67) LOUIS FARRAKHAN KILLED MALCOLM X.

(68) COURTNEY LOVE KILLED KURT COBAIN.

(69) MARION HUGH "SUGE" KNIGHT JR. KILLED CHRISTOPHER "BIGGIE SMALLS" WALLACE.

(70) MARION HUGH "SUGE" KNIGHT JR. BRIBED THE LOS ANGELES ▓▓▓ POLICE DEPARTMENT TO CONCEAL SUGE KNIGHT'S ROLE IN THE MURDER.

(71) THE CIA ORCHESTRATED THE ARAB SPRING.

(72) THE CIA KILLED JOHN F. KENNEDY.



E. HOWARD HUNT'S 2003 CONFESSION IS VALID. HUNT'S BODY WAS FAILING BUT HIS MIND WAS SOUND.

(73) HENRY KISSINGER IS ▓▓ A WAR CRIMINAL FOR HIS ROLE IN THE VIETNAM WAR, CAMBODIA, CHILE, AND ARGENTINA.

(74) CHRIS CHRISTIE WAS COMPLICIT IN THE FORT LEE LANE CLOSURE.

(75) THE CIA TRIANGULATED AGAINST ▓▓▓ THE DoD TO USE THE DoD TO ▓▓▓▓▓▓ FULFILL THE CIA's MANDATE TO CONTAIN COMMUNISM IN SOUTHEAST ASIA.



76) OPERATION: HOMETOWN GLORY IS A SPECIAL COLLECTION SERVICE (U.S. DEPARTMENT OF DEFENSE) HUMAN INTELLIGENCE DOMESTIC BLACK OPERATION RUN UNDER THE BANNER OF THE U.S. DEPARTMENT OF JUSTICE.

77) THE SPECIAL COLLECTION SERVICE IS A "JOINT" CENTRAL INTELLIGENCE AGENCY (CIA) AND NATIONAL SECURITY AGENCY (NSA) PROGRAM.

78) THE COMMANDER-IN-CHIEF OF THE U.S. ARMED FORCES HAS COMMAND AUTHORITY OF THE U.S. DEPARTMENT OF ████████ DEFENSE AND CENTRAL INTELLIGENCE AGENCY.

79) THE OFFICE OF THE SECRETARY OF DEFENSE HAS COMMAND AUTHORITY OF THE U.S. DEPARTMENT OF DEFENSE.

80) THE CENTRAL INTELLIGENCE AGENCY IS LIABLE FOR THE ACTIONS OF THE SPECIAL COLLECTION SERVICE.

81) RES JUDICATA IS NOT APPLICABLE. THE U.S. DEPARTMENT OF JUSTICE HAS NOT FILED AN ANSWER IN 16-CV-3245, 17-CV-3261, AND 19-CV-3001. MR. GRANT'S LAWSUIT HAS NOT BEEN HEARD ON THE MERITS.

82) MR. GRANT'S WITNESSES

MICHAEL J. MADIGAN
JESSE WHITE
EMIL JONES
PATRICIA DAWSON
BARACK H. OBAMA

83) MR. GRANT SEEKS $99 TRILLION IN DAMAGES.

84) THE DoD REMEMBERS 'NAM.



(9)

SDIA, SDGA, WDA̶ ▓▓▓▓▓ EDWI, ALND, ALSD, UTAH, NEW MEXICO

85) THE ILND, ILCD, ILSD, CDCA, WDTX, NDTX, EDTX, NDGA, EDNY, NDWV, ▓▓ WDVA, MARYLAND, NEBRASKA, ▓▓▓▓, EDNC, NORTHERN MARIANA ISLANDS, C.F.C., AND FED. CIR. HAVE NOT FOUND MR GRANT'S ALLEGATIONS TO BE:

86) THE NATIONAL SECURITY AGENCY AND U.S. NORTHERN COMMAND ARE A PART OF THE U.S. DEPARTMENT OF DEFENSE. ▓▓▓▓▓▓▓

28 USC 1915(e)(2)(B)(i);
28 USC 1915(e)(2)(B)(ii);
OR
28 USC 1915(e)(2)(B)(iii).

87) SHAWN CARTER IS THE BEST BIG BROTHER A KID COULD ASK FOR.

88) STEVE JOBS HAS A LARGE PENIS. STEVE JOBS HAS AN ASHTON KUTCHER SIZE PENIS.

89) THOMAS W. COATS HAS A SMALL PENIS. TOM HOPPER DOES NOT.

90) FREDDIE STROMA IS THE SAME SIZE AS TOM HOPPER.

91) TONY BLAIR SAID, "ENGLAND'S NOT DOWN. IT'S IN. ENGLAND IS NEVER DOWN."

92) NATHAN FEL IS THE BEST FRIEND A GUY COULD ASK FOR.

93) WHEN YOU SEE: SALLY RIDE; IT STANDS FOR: "RIDE, MISTRESS, RIDE." D.K. HERNER IS THE MISTRESS.

94) THE COMMANDER-IN-CHIEF AND OFFICE OF THE SECRETARY OF DEFENSE HAVE COMMAND AUTHORITY OF THE U.S. CONTINENTAL MILITARY FORCES TO KEEP MR. GRANT IN ILLINOIS UNDER MILITARY FORCE THROUGH U.S. NORTHERN 10)

_WLG_  8/26/2019

William Lee Grant II
901 Wythe Road

(95) ILSD JUDGES: ▉ MICHAEL J. REAGAN (17-CV-1257); NANCY J. ROSENSTENGEL* (18-CV-806); AND STACI M. YANDLE** DID NOT FIND MR. GRANT'S ALLEGATIONS TO BE: 28 USC 1915(e)(2)(B)(i);

* (19-CV-979 + 19-CV-1104)

** (19-CV-332)

28 USC 1915(e)(2)(B)(ii);

OR

28 USC 1915(e)(2)(B)(iii).

(96) EDVA JUDGES: ROBERT E. PAYNE (18-CV-369); LIAM O'GRADY (18-CV-1328); (18-CV-449); AND ANTHONY J. TRENGA (18-CV-543) DID NOT FIND MR. GRANT'S ALLEGATIONS TO BE: LEONIE M. BRINKEMA

28 USC 1915(e)(2)(B)(i);

28 USC 1915(e)(2)(B)(ii);

OR

28 USC 1915(e)(2)(B)(iii).

(97) DISTRICT OF COLUMBIA JUDGES: TANYA S. CHUTKAN (17-CV-1434); JAMES E. BOASBERG (18-CV-1162); RUDOLPH CONTRERAS ▉▉▉▉▉ (18-CV-1805 + 18-CV-1806); AND CHRISTOPHER R. COOPER (18-CV-1804) DID NOT FIND MR. GRANT'S ALLEGATIONS TO BE: 28 USC 1915(e)(2)(B)(i);

28 USC 1915(e)(2)(B)(ii); OR

28 USC 1915(e)(2)(B)(iii).

(98) ILND JUDGE VIRGINIA M. KENDALL (17-CV-7902) DID NOT FIND MR. GRANT'S ALLEGATIONS TO BE:

*Well LA* 9/2/2019

WILLIAM LEE GRANT II

901 WYTHE ROAD

SPRINGFIELD, IL 62702

(11)

28 USC 1915(e)(2)(B)(i);

28 USC 1915(e)(2)(B)(ii); OR

28 USC 1915(e)(2)(B)(iii).

(99) THE HIV/AIDS VIRUS IS A WORLD WAR II -
JAPANESE VIRUS UNLEASHED ON THE POPULACE TO
GENERATE PROFITS FOR THE PHARMACEUTICAL
COMPANIES.

(100) THE HIV/AIDS "COCKTAIL" CAME FROM THE PENTAGON.

(101) THE ILLINOIS ATTORNEY GENERAL FAILED TO
DENY ▓▓▓ MR. GRANT'S ALLEGATIONS IN THE
ILLINOIS COURT OF CLAIMS (18CC0946 + 18CC1057).

(102) MR. GRANT BEGAN HIS LAWSUIT IN MAY OF 2016
IN THE ILCD WITHIN THE STATUTE OF LIMITATIONS.

(103) THE U.S. CENTRAL COMMAND IS A PART OF
THE DoD, AND IS LOCATED IN TAMPA, FLORIDA.

(104) THE MIDDLE DISTRICT OF FLORIDA HAS NOT
FOUND MR. GRANT'S ALLEGATIONS TO BE:
            28 USC 1915(e)(2)(B)(i),
            28 USC 1915(e)(2)(B)(ii), OR
            28 USC 1915(e)(2)(B)(iii), ▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(105) THE OFFICE OF THE SECRETARY OF DEFENSE USED
JOINT SPECIAL OPERATIONS COMMAND (JSOC) LAWYERS TO
ENGINEER MR. GRANT'S LIFE TO APPEAR IN FEDERAL
COURT.

(106) JSOC IS A PART OF THE U.S. CENTRAL COMMAND, AND
BOTH JSOC AND U.S. CENTRAL COMMAND ARE A PART OF
THE DoD.

(107) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

(12)   Well [signature] 1/21/2020
       WILLIAM LEE GRANT II

*EXHIBIT #9*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| WILLIAM LEE GRANT II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00173 (RDA-IDD) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on Defendant Central Intelligence Agency's ("CIA")

Motion to Dismiss (Dkt. 8), and Plaintiff William Lee Grant II's ("Plaintiff") *pro se* Motions for

Summary Judgment ("Summary Judgment Motions") (Dkt. Nos. 29; 32).   Considering the

Complaint (Dkt. 1), the CIA's Motion to Dismiss, Plaintiff's Opposition to the Motion to Dismiss

(Dkt. 12), Plaintiff's Summary Judgment Motions, the CIA's Oppositions to Plaintiff's Summary

Judgment Motions (Dkt. Nos. 33; 39), and Plaintiff's Reply in furtherance of his Summary

Judgment Motion (Dkt. 34), and for the following reasons, it is hereby ORDERED that the CIA's

Motion to Dismiss is GRANTED, and Plaintiff's Summary Judgment Motions are DENIED as

moot.

### I.   BACKGROUND

At best, the allegations and claims that Plaintiff asserts in his *pro se* Complaint are

incomprehensible, even under the appropriate standard for review of a *pro se* complaint (*infra*, p.

3-5). *See* Dkt. 1. On February 19, 2020, Plaintiff commenced this case, which he describes as a

"Civil Liberties" action. *Id.* He filed suit against the CIA, "Special Collection Service," and "State



of Illinois." *Id.* In his Complaint, he asserts claim under the Amendments Four, Five, Eight, and

Nine of the United States Constitution, as well as under 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

*Id.* at ¶ 2. In support of these claims, Plaintiff has frivolously alleged that "[t]he Commander-In-

Chief of the United States Armed Forces (Ronald Reagan) directed the Secretary of Defense to

create [ ] [Plaintiff] to predict future nuclear attacks." *Id.* at ¶ 7. Plaintiff also makes various

claims about pop culture, different United States government officials, and other public figures.

*See e.g. id.* at ¶¶ 46; 47; 48; 49; 54; 57; 62 65; 66. Such claims include that "O.J. Simpson killed

Nicole Brown-Simpson and Ron Goldman," that "Louis Farrakhan killed Malcom X," and that

"Phillip Mountbatten 'ordered' the assassination of Diana, Princess of Wales." *Id.* at ¶¶ 57; 66;

67. The claims contained in Plaintiff's Complaint are baseless, and mention the CIA, "Special

Collection Service," and the State of Illinois only in passing. *See generally* Dkt. 1.

     What is more, Plaintiff has brought the same or similar claims to a host of various United

States district courts, including this Court, multiple times. *See e.g. Grant v. CIA*, No. 1:19-cv-

1228 (E.D. Va.), Dkt. 1; *Grant*

*v. CIA*, 2:19-cv-512 (E.D. Va.), Dkt. 3; *Grant v. CIA*, 1:20-cv-1024 (C.D. Ill.), Dkt. 13; *Grant v.

CIA*, 1:19-cv-1406 (C.D. Ill.); *Grant v. CIA*, 4:19-cv-839 (E.D. Ark.), Dkt. 3; *Grant v. CIA*, 1:19-

cv-350 (W.D. Pa.), Dkt. Nos. 2-3; *Grant v. CIA*, 2:19-cv-5607 (E.D. Pa.), Dkt. Nos. 4-5; *Grant v.

CIA*, 1:19-cv-1375 (C.D. Ill.), Dkt. 6; *Grant v. CIA*, 0:19-cv-2931 (D. Minn.), Dkt. 5; *Grant v.

CIA*, 4:19-cv-373 (S.D. Iowa), Dkt. 3; *Grant v. CIA*, 4:19-cv-13422 (E.D. Mich.), Dkt. 4; *Grant v.

CIA*, 1:19-cv-1695 (E.D. Wis.), Dkt. Nos. 3-4; *Grant v. CIA*, 2:19-cv-5052 (S.D. Ohio), Dkt. 5;

*Grant v. CIA*, 1:19-cv-24780 (S.D. Fla.), Dkt. 4); *Grant v. CIA*, 2:19-cv-13747 (E.D. La.), Dkt. 5;

*Grant v. CIA*, 1:19cv3377 (D.D.C.), Dkt. 3; *Grant v. CIA*, 1:19-cv-592 (D. Hawaii), Dkt. 6; *Grant

v. CIA*, 4:19-cv-2967 (E.D. Mo.), Dkt. 3; *Grant v. CIA*, 4:19-cv-2969 (E.D. Mo.), Dkt. 4; *Grant v.

*CIA*, 3:19-cv-1104 (S.D. Ill.), Dkt. No. 4; *Grant v. CIA*, 1:19-cv-285 (E.D. Tenn.), Dkt. 6; *Grant v. CIA*, 1:19-cv-174 (S.D. Ga.), Dkt. 8; *Grant v. CIA*, 2:19-cv-736 (D. Utah), Dkt. 5.  One court has described Plaintiff as "a serial litigator, having filed over forty cases since 2016 in federal district courts nationwide." *Grant v. United States Dep't of Treasury*, 3:18-cv-14792018, WL 3216851, at *1 (N.D. Tex. June 21, 2018).  And generally, "Plaintiff's claims are based upon allegations of espionage and conspiracy that are fanciful, fantastic, or delusional, or that rise to the level of the irrational or wholly incredible. . . . [They are typically] part of a pattern of abusive litigation that Plaintiff has [ ] engaged in all over the country." *Grant v. CIA*, 4:19-cv-2969, 2019 WL 6050830, at *2 (E.D. Mo. Nov. 15, 2019).

In this case, the CIA has moved to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 8.  Plaintiff has opposed the Motion to Dismiss (Dkt. 12), and has twice moved for summary judgment (Dkt. Nos. 29; 32).  The CIA has opposed both of Plaintiff's Summary Judgment Motions (Dkt. Nos 33; 39), and Plaintiff has filed a Reply in support of one of those motions (Dkt. 34).

The Court dispenses with oral argument as it would not aid in the decisional process.  Local Civil Rule 7(J); Fed. R. Civ. P. 78.  The matter is now fully briefed and is ripe for decision.

## II.  STANDARD OF REVIEW

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action.  Fed. R. Civ. P. 12(b)(1).  A district court must dismiss an action over which it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1), (h)(3).  In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that the federal subject matter jurisdiction is proper.  *See United States v. Hays*, 515 U.S. 737, 743

(1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Contr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the trial court's "very power to hear the case" is at issue. *Mortensen*, 549 F.2d at 891. The district court is then free to weigh the evidence to determine the existence of jurisdiction. *Adams*, 697 F.2d at 1219. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

### B.   Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) . . . requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible under this standard when a plaintiff pleads factual content sufficient for a court to make a reasonable inference that a defendant is liable. *Id.* Allegations that

4

are conclusory are "not entitled to be assumed true." *Id.* at 681 (citing *Twombly*, 550 U.S. at 554-555). A court should "construe facts in the light most favorable to the plaintiff and draw all reasonable inferences in [her] favor . . . [but] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (internal citations and quotation marks omitted).

Though generally, "extrinsic evidence should not be considered at the 12(b)(6) stage," the United States Court of Appeals for the Fourth Circuit has opined that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Further, this Court has recognized that "[a] document is integral to the complaint where it is significantly related to a cause of action, and it is authentic when it is not in dispute by the opposing party," *McGlothian v. Fralin*, No. 3:18-cv-507, 2019 WL 1087156, at *7 (E.D. Va. Jan. 23, 2019) (citations omitted).

That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17-cv-01365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III.  ANALYSIS

#### A.  Plaintiff's Claims are Precluded

The CIA argues that Plaintiff's Complaint is barred by *res judicata*, and therefore, this Court should dismiss the action. Dkt. 8, 8. The Court agrees.

"Under *res judicata* principles, a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002). "The doctrine of *res judicata* encompasses two concepts: 1) claim preclusion and 2) issue preclusion, or collateral estoppel." *Id.*

"The rules of claim preclusion provide that if the later litigation arises from the same cause of action as the first, then the judgment in the prior action bars litigation not only of every matter actually adjudicated in the earlier case, but also of every claim that might have been presented." *Orca Yachts*, 287 F.3d at 318 (internal citations omitted). A claim is said to be precluded where three elements are met:

> 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996). "Generally, claims are part of the same cause of action when they arise out of the same transaction or series of transactions." *Id.* at 1316.

In considering Defendants' *res judicata* argument, the Court may take judicial notice of the "facts from [ ] prior judicial proceeding[s] . . . ." *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) (internal quotations omitted) (citing *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000)). While Plaintiff's claim in this case may be barred under the doctrine of claim preclusion due to a *host* of cases that he has previously filed, this Court will take judicial notice of a recent case that Plaintiff has filed in this Court, which on its own precludes Plaintiff from proceeding in the instant matter—*Grant v. CIA, et al.*, No. 1:19-cv-01228 (E.D. Va. 2019).

Here, the elements for claim preclusion are easily satisfied.

First, in *Grant v. CIA, et al.*, No. 1:19-cv-01228 (E.D. Va. 2019), Dkt. 24, this Court, "a court of competent jurisdiction in accordance with the requirements of due process," entered a final judgment on the merits. *See In re Varat Enterprises, Inc.*, 81 F.3d at 1315.

Second, in both this case and in *Grant v. CIA, et al.*, No. 1:19-cv-01228 (E.D. Va. 2019), the defendants were the CIA, "Special Collection Service," and the State of Illinois.

Third, in both matters, Plaintiff has alleged the same frivolous claims and asserts the same baseless causes of action. *Compare*, Dkt. 1, *with*, *Grant v. CIA, et al.*, No. 1:19-cv-01228 (E.D. Va. 2019), Dkt. 1.

Thus, this Court finds that this action is barred under the doctrine of claim preclusion, and the CIA's Motion to Dismiss is GRANTED as to all defendants.

B.  Plaintiff's Summary Judgment Motions are Moot

Because the Court finds that Plaintiffs claims are barred by claim preclusion, Plaintiff's Summary Judgment Motions are DENIED as moot.

IV.  CONCLUSION

Accordingly, for the foregoing reasons, it hereby ORDERED that the CIA's Motion to Dismiss (Dkt. 8) is GRANTED as to all defendants;

IT IS FURTHER ORDERED that Plaintiff's Summary Judgment Motions (Dkt. Nos. 29; 32) are DENIED as moot; and

IT IS FURTHER ORDERED that this matter is DISMISSED with prejudice

It is SO ORDERED.

Alexandria, Virginia
January 7, 2021

COURT DID NOT FIND
MR. GRANT'S ALLEGATIONS
TO BE:
28 USC 1915(e)(2)(B)(i),
28 USC 1915(e)(2)(B)(ii), OR
28 USC 1915(e)(2)(B)(iii).

/s/
Rossie D. Alston, Jr.
United States District Judge

Acting Inspector General Glenn A. Fine

Contact Us | FOIA | 

Search Site   **GO**

# OFFICE of INSPECTOR GENERAL
United States Department of Defense

You Are Here » Home » Hotline » Submit a Complaint » **Hotline Complaint**

# The DoD Hotline - Hotline Complaint

--------------------------------------------------------------------

**Your "Hotline Complaint" was successfully submitted.**
Your submission time stamp:
**20160608024747500**

DoD Hotline
The Pentagon
Washington, DC 20301-1900

Hotline Home

**Submit a Complaint**

- Hotline Complaint
- Whistleblower Reprisal
- Classified Complaint
- Contractor Disclosure

Filing Information

FAQ

About the DoD Hotline

Posters and Brochures

Videos and PSAs

Policy References

Helpful Links

Southwest Asia Hotline

Whistleblower Rights & Protections

**Quick Contacts**

\*\*\*\*\*IMPORTANT INFORMATION REGARDING YOUR COMPLAINT\*\*\*\*\*

Dear Sir/Madam.

The Department of Defense (DoD) Hotline received your complaint.

What to expect depending on the nature of your complaint:

- NEW COMPLAINT: Your complaint has been assigned to a Hotline investigator for review. If it's appropriate for another agency to investigate your complaint, it will be forwarded to the appropriate agency. You will be contacted only if additional information is needed. Once a case is opened, we will not discuss its progress, and we will not respond to status requests. You will be notified when your complaint is closed. At that time you will be provided instructions on how to submit a records request through the Freedom of Information Act (FOIA).

- DISCRIMINATION COMPLAINTS: Equal Employment Opportunity (Civilian) and Equal Opportunity (Military) complaints cannot be processed by the DoD Hotline. Failure to file a complaint with your appropriate agency's EEO or EO office within the timeframes specified in EEO guidelines may forfeit your rights under the EEO Act and Title VII. Your local EEO or EO office, as well as the Equal Employment Opportunity Commission (EEOC) at http://www.eeoc.gov/ and the DoD Office of Diversity Management and Equal Opportunity (ODMEO) at http://diversity.defense.gov/ can provide further information and guidance.

- ADDITIONAL INFORMATION: If you submitted additional information or consent to release your identity for investigating your complaint, the Hotline staff will process this information upon receipt.

Information concerning types of complaints the DoD accepts for review can be found at www.dodig.mil/hotline.

You may have just made a "protected communication" under Whistleblower Protection Laws. If you suffer retaliation for filing this complaint you may file a Reprisal complaint. To learn more please refer to the Department of Defense Whistleblower Program website at www.dodig.mil/programs/whistleblower.

Sincerely,

DoD Hotline


**HOTLINE**
Department of Defense
dodig.mil/hotline

This is an auto-generated response.



\* Print a copy of this receipt for your records.

Record of your Hotline Online Complaint Form

M Gmail

EXHIBIT IN SUPPORT OF COMPLAINT

EXHIBIT

William Grant <wgran2@gmail.com>

## RE: Federal Whistleblower Complaint - Operation: Hometown Glory - Complaint submission (9/4/2018)**revised**

Wed, Aug 12, 2020 at 2:26 PM

William Grant <wgran2@gmail.com>
To: printandgo@fedex.com

Greetings,

A Motion was submitted instead of a complaint. Please see the attached complaint. The IL AG and DOJ do not deny Mr. Grant's allegations.

---------- Forwarded message ----------
From: **William Grant** <wgran2@gmail.com>
Date: Tue, Sep 4, 2018 at 1:20 PM
Subject: RE: [Non-DoD Source] RE: Federal Whistleblower Complaint - Operation: Hometown Glory - Complaint submission (9/4/2018)
To: <WhistleblowerProtectionCoordinator@dodig.mil>

Please let me know if you can open the attached email. Please let me know if your office needs a hard copy of the complaint.

William Grant

---------- Forwarded message ----------
From: **Whistleblower Protection Coordinator** <WhistleblowerProtectionCoordinator@dodig.mil>
Date: Tue, Sep 4, 2018 at 1:08 PM
Subject: RE: [Non-DoD Source] RE: Federal Whistleblower Complaint - Operation: Hometown Glory
To: William Grant <wgran2@gmail.com>

Mr. Grant,

Thanks for your inquiry. However, I apologize for not being able to open your complaint. It appears that you have sent it to several agencies within the federal government to include the DoD Hotline. For DoD, you have placed in the appropriate channel for review and action, if necessary.

V/r

EXHIBIT
GRANT V BOOK EXHIBIT #12

8/12/2020

Gmail - RE: Federal Whistleblower Complaint - Operation: Hometown Glory - Complaint submission (9/4/2018)**revised**

*KMSharpless*

Whistleblower Protection Coordinator

Administrative Investigations

Department of Defense Office of the Inspector General

4800 Mark Center Drive, Alexandria, VA 22350-1500

(703) 699-1794

**From:** William Grant <wgran2@gmail.com>
**Sent:** Sunday, September 2, 2018 9:42 PM
**To:** js.pentagon.dom.list.ig-mbx@mail.mil; jghotline@nsa.gov; fraudnet@gsaig.gov; nro_oig@nro.mil; IG@nga.mil; hotline@oig.dot.gov; Hotline <Hotline@dodig.smil.mil>; hotline@oig.dol.gov; IG_Hotline@dodiis.mil
**Cc:** inspector.general@usdoj.gov; oig.hotline@usdoj.gov; whistleblower@judiciary-rep.senate.gov; whistleblowers@mccaskill.senate.gov; whistleblower.Ombudsman@oig.hhs.gov; Whistleblower Protection Coordinator <WhistleblowerProtectionCoordinator@DODIG.MIL>; whistleblower@mail.house.gov
**Subject:** [Non-DoD Source] RE: Federal Whistleblower Complaint - Operation: Hometown Glory

Greetings,

Please see the attached Complaint.

The IL AG and DOJ do not deny the allegations.

William Grant

901 Wythe Road

Gmail - RE: Federal Whistleblower Complaint - Operation: Hometown Glory₍₁₃₅₎Complaint submission (9/4/2018)**revised**

Springfield, IL 62702

(217)726-5269

This e-mail is from the Office of the Inspector General, Department of Defense, and may contain information that is "Law Enforcement Sensitive" (LES) or "For Official Use Only" (FOUO) or otherwise subject to the Privacy Act and/or legal and or other privileges that restrict release without appropriate legal authority.

Operation_Hometown Glory_16-CV-3245_AMENDED COMPLAINT.pdf
25207K





EXHIBIT IN SUPPORT
OF COMPLAINT

GRANT v BARR

GRANT v BARR   EXHIBIT IN SUPPORT
OF COMPLAINT



UNIVERSITY OF ILLINOIS

By authority of the Board of Trustees of the
and upon recommendation of the Senate

at Springfield

William Grant

has been admitted to the Degree of

Bachelor of Arts in Psychology

and is entitled to all rights and honors thereto appertaining.
Witness the Seal of the University and the Signatures of its Officers
this eighteenth day of December two thousand and ten.

UYTHE KOAD
IFIELD, IL 62702

DOJ-FASS

Tracking No: 70201290000685271 37

USAO - - -
USAO/JCB

Building:     555 4TH ST.,
Room:
Dept:         USAO
Received On: 11/04/2021 08:03:14am
Route:



RETURN RECEIPT
REQUESTED

Civil Division
NOV 05 2021
US Attorney's Office DC

7020 1290 0000 6852 7137



CHANNING D. PHILLIPS
ACTING U.S. ATTORNEY
555 FOURTH STREET, N.W.
WASHINGTON, D.C. 20530
ATTN: CIVIL PROCESS CLERK

X-RAYED
NOV 0 4 2021
[DOJ MAILROOM]



